Scott T. PROPST, Appellant,

v.

Walter LEAPLEY; Frank Hopkins; Roger Anderson, Appellees.

No. 88–2799.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1989.

Decided Oct. 10, 1989.

Rehearing Denied Nov. 6, 1989.

Thomas M. White, Omaha, Neb., for appellant.

Susan Jacobs, Lincoln, Neb., for appellees.

Before McMILLIAN and BOWMAN, Circuit Judges, and DUMBAULD,* Senior District Judge.

McMILLIAN, Circuit Judge.

Scott T. Propst appeals from a final judgment entered in the District Court for the District of Nebraska, after a trial to the court, finding that prison officials at the Lincoln Correctional Center (LCC) did not discriminate against him in violation of 42 U.S.C. § 1983. For reversal, Propst argues that the district court's finding of no discrimination is clearly erroneous in light of the evidence he presented: (1) that because of his race he was found guilty of violating prison rules while an equally guilty party of another race was found not guilty, (2) that the LCC disciplinary committee had a history of treating black inmates more le-

niently than white inmates and (3) that the disciplinary committee prejudged his case based on his race rather than on the facts of the case. For the reasons discussed below, we reverse the judgment of the district court and remand for a hearing on damages.

Propst is a white male prisoner at the LCC. On December 5, 1985, Propst was placed on administrative detention and locked in his cell for hitting Williams, another prisoner. The district court found that Propst believed that Alphonso Fry, a black prisoner at the LCC, had told prison officials about the Williams incident.

On December 6, 1985, Propst was released from his cell for a one-hour exercise period. Propst's door was left so that it would automatically lock if it were closed. Propst walked over to another cell and began to talk to two other prisoners. At that point, Fry approached Propst and the two exchanged angry words about the Williams incident.

Propst retreated to his cell warning Fry to leave him alone. Fry followed Propst and blocked the doorway of Propst's cell. Propst then picked up an X-acto knife handle, which he had in his cell with permission of the authorities, pointed the handle at Fry, and ordered Fry out of the cell. Fry went into a room facing Propst's cell and returned with a chair. He hit Propst twice with the chair before Propst was able to wrestle it away. Propst then stayed in his cell while Fry went down two flights of stairs where he procured a broken mop handle. Propst did not, however shut his cell door which would have locked behind him. Fry then returned to Propst's cell. When Propst saw Fry coming down the hall with a mop handle, he grabbed a pool cue with which to defend himself. The two fought once more. By the time prison employees broke up the fight, Fry had gotten the better of Propst and was hitting Propst on the head with the pool cue.

As a result of the incident, Propst was charged with aggravated assault, assault

---

* The Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

fighting, possession or manufacture of weapons, flare of tempers, and minor physical contact. Fry was charged with the same violations plus entering unauthorized areas. The disciplinary committee, consisting of LCC employees Roger Anderson, Walter Leapley, and Frank Hopkins, held a hearing for both Propst and Fry. Propst was found guilty of aggravated assault, assault fighting, and possession or manufacture of weapons. He was placed in segregation for fourteen days. In addition, he lost both his prison job and his hobby privileges, resulting in a loss of income. Fry was found not guilty of all charges.

On August 7, 1986, Propst filed a 42 U.S.C. § 1983 complaint in the district court against members of the disciplinary committee and other prison officials alleging racial discrimination. On October 28, 1988, the district court held that the disciplinary committee had not discriminated against Propst. This appeal followed.

*Standard of Review*

■ The district court concluded, as a finding of fact, that the disciplinary committee did not discriminate against Propst. The standard of review for a district court's findings of fact is "clearly erroneous." Fed.R.Civ.P. 52(a). An appellate court may find a district court's finding of fact to be clearly erroneous if, in consideration of the entire record, the appellate court is left with the definite and clear conviction that a mistake has been made. *Richmond v. Carter*, 616 F.2d 381 (8th Cir.1980). In considering the entire record in the instant case, this court is left with such a conviction.

*Evidence of Disparate Treatment*

■ It is obvious to this court in reviewing the facts surrounding the fight between the two inmates as recited by the district court that Propst and Fry received disparate treatment at the hands of the disciplinary committee. The district court accepted the disciplinary committee's explanation that Propst was found guilty because he could have avoided further conflict by locking his cell door behind him (and giving up his remaining exercise peri-

od) and because Propst was the first to introduce a weapon.

These facts regarding Propst's guilt, however, hardly exonerates Fry for his actions. Nor does the committee explain why Fry was not equally guilty for returning with a broken broom handle from an unauthorized area when he could as easily have retreated to his cell. In fact the disciplinary committee found that Fry could have avoided the second fight: "Facts indicate that offender Propst initiated incident. The committee believes that offender Fry could have stayed out of area after initial confrontation." Exh. 1. Evidence of disparate treatment is highly probative of discriminatory intent in civil rights cases. *See United States v. Bledsoe*, 728 F.2d 1094, 1098 (8th Cir.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984).

*Direct Evidence of Race Based Discrimination*

■ In addition to the facts of his own case, Propst also offered direct evidence of race-based discrimination at the LCC. Ten months before the Propst–Fry altercation Terry Ford, an LCC employee, investigated the disciplinary process at the LCC. During the course of his investigation, Ford interviewed Dennis Bakewell, an assistant warden in charge of the disciplinary process. Propst entered into evidence the ombudsman's information sheet in which Ford recorded that Bakewell had said, "we are inclined to be more lenient to blacks" and that the committee feared charges of racism from black inmates.

In essence, the warden in charge of the disciplinary process admitted that race-based discrimination against whites was being practiced a mere ten months before the Propst–Fry altercation. This direct evidence is highly probative as to whether Scott Propst was a victim of race-based discrimination ten months later.

*Evidence of Prejudgment by Disciplinary Committee*

■ Finally, Propst offered evidence that the disciplinary committee had prejudged his case on bases other than the facts. Michael Shurter, an ex-employee of

the LCC, testified that Frank Hopkins, a disciplinary committee member, had told him before the hearing that Propst would be found guilty and that Fry would be found not guilty. In view of the other evidence in this case, the logical inference is that the committee had judged the case on the basis of Propst's race.

The district court characterized this case as "close." In reviewing its decision we are mindful that appellate courts must give great deference to a district court's findings of fact. Upon review of the whole record, however, we are left with a definite conviction that the district court has made a mistake in determining the facts in this case.

Accordingly, we reverse the judgment of the district court and remand this case for a hearing on damages.