# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1995

———————

Arthor C. Lewis,      *

     *

     Plaintiff - Appellant,      *

     *    Appeal from the United States

     v.      *    District Court for the

     *    Eastern District of Arkansas.

Margaret Jacks; Marie Linzy,      *

     *

     Defendants - Appellees.      *

———————

Submitted: December 14, 2006
Filed: May 11, 2007

———————

Before LOKEN, Chief Judge, JOHN R. GIBSON and MURPHY, Circuit Judges.

———————

LOKEN, Chief Judge.

Arkansas inmate Arthor C. Lewis worked as a seamster in the garment factory at the Maximum Security Unit of the Arkansas Department of Corrections. After exhausting prison grievance remedies, Lewis commenced this damage action under 42 U.S.C. § 1983 and state law, alleging that his factory supervisor, Margaret Jacks, discriminated against him on the basis of race and then retaliated against him for filing a grievance, and that Jacks's supervisor, Assistant Program Manager Marie Linzy, failed to take remedial action when Lewis complained about Jacks's discrimination.

The district court[1] granted defendants summary judgment. <u>Lewis v. Jacks</u>, 2006 WL 449260 (E.D. Ark. Feb. 23, 2006). Lewis appeals the dismissal of his federal equal protection and retaliation claims and his companion state law claims. Reviewing the grant of summary judgment *de novo*, we affirm.

Lewis alleged in his amended complaint and in deposition testimony that Jacks told Lewis and two other black inmates to "shut up and stop laughing" about ten minutes before break time on May 24, 2000. Lewis alleged that this was discriminatory enforcement of a factory rule prohibiting excessive noise because, at the same time, four white inmates who were loudly talking and joking with Jacks were not also told to be quiet. Lewis complained to Linzy about the unequal treatment and then filed a prison grievance alleging discrimination by Jacks. The grievance was not made part of the summary judgment record. Lewis testified that the warden returned his submission without addressing the grievance because it was submitted without the grievance document. Lewis alleged that, after he filed this grievance, Jacks retaliated "by making him do the same amount of work as three men." Linzy ignored his frequent complaints about this unfair work load.

Lewis further alleged that, more than two years later, he had a tooth pulled on June 24, 2002. He was given two days off work, but Linzy commented, "you'll have to work twice as hard when you get back." On July 12, Lewis complained to Jacks and Linzy that he was overworked; Jacks said he would get no help. Lewis then complained to Linzy's boss, Program Manager Betty Green, who said, "just do what you can and don't worry about it." On July 17, an inmate floor walker put a stack of new work on Lewis's work bench. Lewis yelled at the inmate, who said "Ms. Jacks told me to put it on your bench." Lewis then loudly confronted Jacks. He received a major disciplinary "write-up" for the altercation. He filed three grievances against

---

[1]The HONORABLE SUSAN WEBBER WRIGHT, United States District Judge for the Eastern District of Arkansas.

Jacks and Linzy and commenced this action when the grievances were denied on the ground that his complaints of discrimination and retaliation were unsupported.

**A. Equal Protection Claims.** Lewis argues that supervisor Jacks violated his Fourteenth Amendment right to equal protection (1) by telling black inmates but not white inmates to "shut up and quit laughing" on May 24, 2000, and (2) by requiring Lewis to do more work than three white inmate seamsters.

The first claim requires little discussion. Lewis alleges that Jacks told him to "shut up." Lewis was not injured, he was not disciplined, and he was not transferred to another prison job or facility. Verbal abuse by correctional officials, even the use of reprehensible racially derogatory language, is not by itself unconstitutional race discrimination "unless it is pervasive or severe enough to amount to racial harassment." Blades v. Schuetzle, 302 F.3d 801, 805 (8th Cir. 2002); see Tajeddini v. Gluch, 942 F. Supp. 772, 781 (D. Conn. 1996); Alnutt v. Cleary, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996). Telling admittedly noisy inmates to "shut up" on one occasion did not violate the Fourteenth Amendment, even if equally noisy inmates of another race were not equally chastised.

Turning to Lewis's second claim of racially discriminatory work assignments, unequal treatment of persons who are "entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." Batra v. Bd. of Regents, 79 F.3d 717, 721 (8th Cir. 1996), quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944). Therefore, Lewis must prove that Jacks gave him more garment factory work on account of his race. To avoid summary judgment on this claim, Lewis must "identify affirmative evidence from which a jury could find [proof of] the pertinent motive," race discrimination. Crawford-El v. Britton, 523 U.S. 574, 600 (1998). Discriminatory purpose can be proved with various kinds of direct and circumstantial evidence but is most often proved with

evidence that similarly situated inmates were treated differently.  See Giles v. Henry, 841 F. Supp. 270, 274-76 (S.D. Iowa 1993).

We conclude that Lewis failed to present affirmative evidence that Jacks's work assignments were motivated by race discrimination.  Lewis alleged that Jacks made him sew all the right pockets on pants being assembled by the factory, while four inmates were allowed to sew on the left pockets.  But he acknowledged that one of the four was black, and he offered no other evidence that Jacks or any other garment factory supervisor assigned work on the basis of the inmates' race.  Lewis admitted that he was given no personal production quota.  He did not refute defendants' evidence that each inmate was allowed to work at his own pace, that Lewis was a particularly fast worker, and that Lewis complained to every supervisor that he worked too hard but could have chosen to do less work.  The record simply contains no affirmative evidence from which a jury could find the requisite race discrimination motive by Jacks or Linzy in assigning work to Lewis.

**B. Retaliation Claims.**  Alternatively, Lewis contends that Jacks increased his work load after May 24, 2000, in retaliation for his filing a prison grievance against her.  To succeed on his § 1983 retaliation claim, Lewis must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against Lewis that would chill a person of ordinary firmness from engaging in that activity.  See Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004), cert. denied, 126 S. Ct. 371 (2005).  The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity.  Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994).  Retaliatory action that worsens an inmate's working conditions can be sufficiently adverse to be actionable under § 1983.  See Madewell v. Roberts, 909 F.2d 1203, 1204-06 (8th Cir. 1990).

The district court concluded that Lewis was a fast worker by choice and failed to show that Jacks pressured him or required him to perform more work than other

inmates. On appeal, Lewis argues this overlooks his testimony that Linzy told him he would have to work twice as hard after taking two days off to have a tooth pulled in June 2002. But this argument is unrelated to his claim that Jacks retaliated after he filed a grievance in May 2000. To avoid summary judgment, Lewis must submit "affirmative evidence [of] a retaliatory motive." Wilson v. Northcutt, 441 F.3d 586, 592 (8th Cir. 2006), quoting Crawford-El.

Linzy testified that Lewis complained "to every supervisor down there" that he had to do all the work. Lewis admitted that the factory manager, responding to his July 2002 complaint, told him to "just do what you can." The altercation on July 17 when another inmate put more work on his bench, which resulted in Lewis receiving a disciplinary write-up and filing three more grievances, occurred more than two years after he filed the grievance against supervisor Jacks. This lack of a temporal connection between the protected activity and the alleged retaliation dispels any inference of causal connection. See Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002). We conclude that summary judgment was proper because the record contains insufficient evidence that Lewis's work assignments would chill an inmate of ordinary firmness from filing grievances, and no affirmative evidence that Jacks imposed (or Linzy approved) work increases as retaliation for Lewis's May 2000 grievance. See Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987) (broad and conclusory allegations insufficient to support a § 1983 retaliation claim).

**C. State Law Claims.** Lewis's amended complaint alleged violations of his "civil and constitutional rights under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act." He requested damages under those statutes "and under the United States and Arkansas Constitutions." The Arkansas Civil Rights Act provides a cause of action for damages for "the deprivation of any rights . . . secured by the Arkansas Constitution" by any person acting under color of state law. Ark. Code Ann. § 16-123-105(a). The statute further provides that, in construing this section, "a court may

look for guidance to state and federal decisions interpreting . . . 42 U.S.C. § 1983." Ark. Code Ann. § 16-123-105(c).

In the district court, defendants moved for summary judgment dismissing all claims. Their brief in support of this motion relied on federal cases applying § 1983 and the analogous <u>Bivens</u> doctrine. Under § 16-123-105(c), these federal cases were persuasive authority in resolving Lewis's state law claims. Thus, defendants' motion gave Lewis ample notice that his state law claims were at issue. In opposing that motion, Lewis explicitly referred to his state law claims but likewise cited only federal cases applying federal law. The district court dismissed all claims on the merits, without separately discussing the state law claims.

On appeal, Lewis argues that the district court erred in dismissing his pendent state law claims, arguing for the first time that the Arkansas Constitution and the Arkansas Civil Rights Act are more protective of a prisoner's rights than § 1983. In support, Lewis cites <u>Shepherd v. Washington County</u>, 962 S.W.2d 779 (Ark. 1998), a case involving the unrelated issue of when a state custodian can be held liable for failing to protect third parties from an inmate's violence. This argument was not raised in the district court, and we decline to consider it for the first time on appeal. We note that the Supreme Court of Arkansas recently issued a decision limiting the standard in <u>Shepherd</u> to the facts of that case. <u>See</u> <u>Grayson v. Ross</u>, _ S.W.3d _, 2007 WL 766333 (Ark. March 15, 2007). As Lewis did not argue to the district court that his state law claims required separate analysis, the court did not err in dismissing the state law claims as well as the § 1983 claims on the merits.

The judgment of the district court is affirmed.

_____