**Ramadan SHABAZZ, Plaintiff,**

v.

**Kathleen A. COLE and James Matesanz, Defendants.**

**No. CIV. A. 96–10486–MBB.**

United States District Court, D. Massachusetts.

June 25, 1999.

182

Ramadan Shabazz, Norfolk, MA, Pro se.

Judith Buckley Hayman, Nancy White, Joan T. Kennedy, Department of Correction, Robert Palumbo, Dept. of Correction, Boston, MA, for Kathleen A. Cole, James Matesanz, Defendants.

## MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS DEFENDANTS JAMES MATESANZ AND KATHLEEN COLE (DOCKET ENTRY # 79)

BOWLER, United States Magistrate Judge.

On January 8, 1999, defendants Kathleen A. Cole ("Cole") and James Matesanz ("Matesanz") (collectively: "defendants") filed their second motion to dismiss without seeking leave of court. (Docket Entry # 79). Initially, this court denied the motion on a procedural basis as untimely on January 19, 1999. Trial was set to commence in five days, the June 12, 1998 dispositive motion deadline having long since passed.

On January 20, 1999, defendants nevertheless filed a motion to reconsider the denial of the January 8, 1999 motion to dismiss. (Docket Entry # 120). In open court on January 25, 1999, with the venire waiting, this court reluctantly decided to allow the motion for reconsideration (Docket Entry # 120) based on the policy concerns supporting the qualified immunity doctrine and thereby consider the merits of the second motion to dismiss (Docket Entry # 79). Meanwhile, defendants' counsel agreed in open court to absorb plaintiff Ramadan Shabazz' costs of filing an opposition to the motion to dismiss.

Accordingly, the motion to dismiss filed on January 8, 1999, and the arguments raised in the motion for reconsideration to support dismissal are presently pending before this court. In a Procedural Order dated January 26, 1999, this court advised plaintiff Ramadan Shabazz ("Shabazz") to address the issues raised in the January 8, 1999 motion to dismiss (Docket Entry # 79) and in the January 20, 1999 motion for reconsideration (Docket Entry # 120).

On February 5, 1999, Shabazz filed: (1) an opposition to the motion for reconsideration (Docket Entry # 136); (2) an opposition to the January 8, 1999 motion to dismiss (Docket Entry # 137);[1] and (3) an affidavit in support of his objections to the motion to dismiss (Docket Entry # 138). In addition to containing his own statements and averring to the truth of the factual allegations and exhibits in the complaint, Shabazz' affidavit refers to various affidavits filed in opposition to the first motion to dismiss. (Docket Entry # 138).

■ On a motion to dismiss under Rule 12(b)(6) ("Rule 12(b)(6)"), Fed.R.Civ.P., however, it is improper to consider documents not attached to the complaint or expressly incorporated therein. *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993). None of the narrow exceptions to this rule permit consideration of Shabazz' affidavit or the affidavits filed in opposition to the first motion to dismiss. *See Watterson v. Page,* 987 F.2d at 3 (listing exceptions).

Defendants captioned their motion as a motion to dismiss, summarized the relevant facts set forth in the complaint and failed to submit any affidavits and supporting documentation or a statement of undisputed material facts with page references to such affidavits and other documentation. *See* LR. 56.1. On the other hand, the body of the motion also sets forth the standard of review for a summary judgment motion filed under Rule 56, Fed.R.Civ.P., as well as the standard of review under a Rule 12(b)(6) motion. The motion also concludes by moving in the alternative for summary judgment.

■ Defendants' failure to include a material statement of undisputed facts with page references to affidavits and documentation "constitutes grounds for denial of the motion." LR. 56.1. Local Rule 56.1 expressly warns litigants that failure to submit the statement can result in the denial of the motion. In light of defendants' history and pattern of failing to comply with the Local Rules[2] and re-

---

1. Although titled a memorandum of law in support of Shabazz' affidavit, the filing carefully addresses each argument raised in the January 8, 1999 motion to dismiss. In light of Shabazz' *pro se* status, this court construes the filing as an opposition to the motion to dismiss.

2. For example, defendants' memorandum in support of their first motion to dismiss (Dock-

peated failure to comply with deadlines set by this court, defendants' additional failure to submit a statement of undisputed material facts with page references to affidavits and documentation provides an adequate basis to deny defendants' alternative motion for summary judgment. *See generally Air Line Pilots Association v. Precision Valley Aviation, Inc.*, 26 F.3d 220, 224 (1st Cir.1994) ("district courts are entitled to demand adherence to specific mandates contained in the [local] rules").

Consequently, this court treats the motion as one for dismissal under Rule 12(b)(6). When reviewing a Rule 12(b)(6) motion, this court accepts the factual allegations in the complaint as true and makes all reasonable inferences in favor of the plaintiff. *Watterson v. Page*, 987 F.2d at 3. Dismissal "is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." *Cooperman v. Individual, Inc.*, 171 F.3d 43, 46 (1st Cir. 1999). Although "great specificity is ordinarily not required," *Garita Hotel, Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 17 (1st Cir.1992), the plaintiff must nevertheless "set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Cooperman v. Individual, Inc.*, 171 F.3d at 47.

■ Because defendants raise an argument as to the conclusory nature of the complaint's allegations, it is worth delineating the "dividing line between adequate 'facts' and inadequate 'conclusions.'" *Cooperman v. Individual, Inc.*, 171 F.3d at 47. Conclusions become facts for purposes of supporting a Rule 12(b)(6) motion when the "conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability." *Cooperman v. Indi-*

*vidual, Inc.*, 171 F.3d at 47–48 (ellipses omitted).

## BACKGROUND

With this framework in mind, the complaint and attached exhibits, which are also incorporated by reference, show the following.

Shabazz, an African–American inmate at the Bay State Correctional Center ("BSCC") in Norfolk, Massachusetts, worked in the law library at BSCC from 1991 to the time of his November 29, 1994 resignation. During this period, Cole was the Institutional Librarian and Matesanz was the Superintendent at BSCC.

As one of two law clerks assigned to the law library, Shabazz' work included assisting other inmates in drafting briefs and maintaining the law library's collection of legal materials. He consistently maintained a good work record and treated Cole with the appropriate level of deference.

Cole, however, repetitively used racial slurs when speaking to Shabazz throughout this time period. Shabazz details the consistent use of racial epithets directed at him by Cole in his November 29, 1994 resignation. He also avers to Cole's use of racial epithets to other inmates of Hispanic, African American and Asian descent.

On November 28, 1994, Cole issued the first of two disciplinary reports against Shabazz. Knowing that Monday was Shabazz' day off, Cole required Shabazz to report to work. After Sergeant Brien Gomez issued a direct order for Shabazz to report to work, Shabazz complied. Earlier that day, Cole "verbally abused" at least two other inmates in the library with respect to their use of the law library's computer.

---

et Entry # 39) exceeded 20 pages. Likewise, their memorandum in support of the present motion to dismiss exceeds 20 pages. In violation of LR. 7.1(b)(4), defendants did not seek leave of court to exceed the 20 page limit. In addition, in lieu of filing an opposition to a

motion to compel (Docket Entry # 22) within the required 14 day period, *see* LR. 7.1(b)(2), defendants waited until this court ruled on the motion and then belatedly sought reconsideration of the unfavorable result.

Upon arriving at the law library, Shabazz spoke with Cole and advised her that it was his day off. After additional discussion, Cole stated that she simply wanted Shabazz to know that the law library needed coverage. Shabazz then returned to his cell with a correction officer.

When Shabazz reported to work the next day, Cole stated to Shabazz, in an abusive tone of voice, that she would not allow him " 'to get away with what you did to me yesterday.' " (Docket Entry # 1, Ex. 2). Shortly thereafter, she used a " 'purely' racial' " tone of voice to Shabazz. (Docket Entry # 1, Ex. 2). She then issued a disciplinary report against Shabazz charging him with: (1) disobeying an order or being insolent to a staff member; (2) an unexcused absence from work; and (3) conduct that disrupts the orderly running of the institution. 103 C.M.R. §§ 430.24(1), (5) & (8). The disciplinary officer dismissed all three of the charges as baseless.[3]

On the following day, November 29, 1994, Shabazz resigned from his job because he considered the environment intolerable. He also submitted a formal grievance describing Cole's use of ethnic expressions. The November 29, 1994 formal grievance was resolved by the grievance officer without further appeal.

On November 29, 1994, Alicia Ryan ("Ryan"), the Law Library Supervisor, called Shabazz to determine "what was going on in the library." (Docket Entry # 1, Ex. 2). Ryan asked Shabazz if he would be willing to speak with Matesanz about the situation. Two days later, on December 1, 1994, the administration required Cole to ask the other inmate/clerks if they also wanted to leave their positions without receiving a disciplinary report. Two inmates accepted the offer and left their positions in the library.

Since Shabazz filed the formal grievance and left his position, Cole repeatedly asked Shabazz to withdraw his resignation. She wanted to remove the damaging information from her employment folder because she felt it would harm her prospects for future employment.

In October 1995 a second incident occurred causing Cole to lodge additional disciplinary charges against Shabazz. On October 26, 1995, Shabazz entered the law library in order to photocopy a grievance or letter he planned to submit to Matesanz concerning Cole's charging inmates fees for photocopying legal documents. As set forth in the grievance, which Cole reviewed, section 478.11(4) of chapter 103 of the Code of Massachusetts Regulations states in no uncertain terms under the category of legal services that, "All photocopying requests shall be compiled within reasonable amounts at no charge." 103 C.M.R. § 478.11(4).

Shabazz' October 26, 1995 grievance informs Matesanz of Cole's practice of charging inmates for photocopying legal materials. It also asks Matesanz for an explanation for such fees.

After reading the grievance, Cole informed Shabazz that he would have to pay for photocopying various legal exhibits. When Shabazz asked for a number of envelopes, Cole refused the request by citing a fictitious rule prohibiting the use of legal size envelopes for internal institutional mailings. Shabazz advised Cole, however, that he needed the envelopes to send mail to the court and to certain attorneys, as well as to Matesanz and other BSCC officials. Cole then told Shabazz that he would have to wait for her to sign the photocopying request. At all times, Shabazz treated Cole with proper respect.

Some time later that day, a correction officer approached Shabazz in the law library and inquired about the exchange with Cole. After reviewing the grievance, the correction officer did not view the incident as an issue. Meanwhile, Shabazz also sent a letter to Matesanz detailing the

---

**3.** Shabazz submits that Cole issued the disciplinary report in retaliation for Shabazz' refusal to work on his day off.

incident. Matesanz did not reply to either the grievance or the October 26, 1995 letter describing the incident.

On October 30, 1995, Shabazz received a copy of the disciplinary report containing the charges lodged by Cole with respect to the October 25 or 26, 1995 incident.[4] Therein, she cites Shabazz for committing two major offenses, to wit, insolence towards a staff member and conduct which disrupts the orderly running of the institution. 103 C.M.R. §§ 430.24(1) & (8).

The disciplinary report accused Shabazz of becoming loud and agitated when informed of having to pay for photocopies. When Cole informed Shabazz that he could not use legal envelopes for internal mailings, he became extremely agitated and continued to harass Cole, according to the disciplinary report.

Two students from the Harvard Prison Legal Assistance Project represented Shabazz at the December 1, 1995 disciplinary hearing. The hearing officer denied Shabazz' request to inspect in advance of the hearing certain documents including a copy of the photocopying policies. At the hearing, the hearing officer accepted five affidavits from various inmates. These affidavits uniformly state that Shabazz never acted in an agitated and/or disrespectful manner towards Cole.

At the disciplinary hearing, the hearing officer heard testimony from both Shabazz and Cole. The notes from the disciplinary hearing also list five inmate/witnesses with the notation, "See affidavit."[5] The hearing officer found Shabazz not guilty on the charge of disrupting the orderly running of the institution. After discounting two of the inmate affidavits because one inmate did not witness the incident and the other was not objective, the hearing officer found Shabazz guilty of the charge of insolence towards a staff member. He based the

finding on the disciplinary report and Cole's testimony during the hearing.

The hearing officer then reduced the disciplinary charge from a major to a minor infraction and sanctioned Shabazz to one week's loss of library privileges, albeit allowing Shabazz to continue using the law library.

Shabazz appealed the disciplinary finding to Matesanz. In a three page brief, Shabazz' student/attorney from the Harvard Prison Legal Assistance Project contended that there was insufficient evidence to support the charge. He also objected to the exclusion of testimony from inmate/witnesses and Cole's past history of bias reflected in her filing of the dismissed disciplinary charge in 1994.

On December 28, 1995, Matesanz denied the appeal. According to the complaint, Matesanz had "direct knowledge" of Cole's conduct at all times.

The complaint sets forth the following seven causes of action: (1) retaliation, presumably by filing disciplinary charges, for Shabazz filing grievances in violation of the First and Fourteenth Amendments; (2) harassment and use of racial slurs by Cole in violation of the First and Fourteenth Amendments and Shabazz' federal and state civil rights; (3) filing false disciplinary charges against Shabazz due to his race in violation of the First and Fourteenth Amendments and Shabazz' federal and state civil rights; (4) constructively discharging Shabazz from his position as a law clerk due to his race in violation of the First and Fourteenth Amendments and Shabazz' federal and state civil rights; (5) finding Shabazz guilty of the disciplinary charge of insolence without sufficient evidence in violation of state law including Massachusetts regulations, section four of Massachusetts General Laws chapter 249

---

4. The date of the disciplinary report is October 25, 1995. The complaint states that the incident occurred on October 26, 1995.

5. Construing the record in Shabazz' favor, this court will assume that these witnesses did

not testify in person at the disciplinary hearing inasmuch as Shabazz' appeal objects, in part, to the hearing officer's refusal to hear testimony from inmate/witnesses.

("chapter 249"), sections one through eight of Massachusetts General Laws chapter 30A and the state constitution; (6) denying Shabazz the opportunity to present witness testimony and produce documentary evidence in contravention of Shabazz' state constitutional rights, Massachusetts regulations and sections one through eight of Massachusetts General Laws chapter 30A ("chapter 30A"); and (7) conversion under state law by charging Shabazz for photocopies without a rule of regulation authorizing such charges. In addition to damages, Shabazz seeks declaratory and injunctive relief.

### DISCUSSION

Defendants move to dismiss this action for failure to state a claim for relief because: (1) the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), precludes the existence of a liberty interest under the Due Process Clause; (2) Shabazz' failure to commence an action for certiorari under chapter 249 within 60 days prevents him from proceeding in federal court; (3) the Supreme Court's decision in *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), bars Shabazz' challenge to improper disciplinary procedures under 42 U.S.C. § 1983 ("section 1983"); (4) the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, bars Shabazz' claims for failure to exhaust administrative remedies and precludes his claim for emotional distress absent a physical injury; (5) Shabazz has no constitutional right to be free from false disciplinary charges except in retaliation for an improper purpose; (6) Shabazz has no section 1983 claim for verbal harassment; (7) Shabazz' claims under the Massachusetts Civil Rights Act ("MCRA"), Massachusetts General Laws chapter 12, section 11H and I, fail due to the absence of any allegation of a violation of his civil rights resulting from threats, intimidation or coercion;[6] (8) Shabazz has no constitutional right to a particular work assignment unless provided by state law; (9) liability cannot be imposed based on respondent superior; (10) defendants cannot be sued in their official capacity; and (11) defendants are entitled to qualified immunity. This court addresses these arguments seriatim.

### I. *Sandin v. Conner*

■ In *Sandin v. Conner*, 515 U.S. at 484, 115 S.Ct. 2293, the Supreme Court redefined the circumstances in which a liberty interest will arise for purposes of the protections of the Due Process Clause. Rejecting the prior manner of searching state statutes and prison regulations for mandatory language, the Supreme Court limited state created liberty interests to restraints which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484, 115 S.Ct. 2293. Thus, if the restraint did not exceed the sentence itself such as to give rise to protection by "the Due Process Clause of its own force," the restraint must be atypical in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. at 484, 115 S.Ct. 2293. In *Sandin*, the Supreme Court concluded that 30 days disciplinary confinement in a special holding unit did not constitute such atypical, significant hardship sufficient to create a liberty interest. *Sandin v. Conner*, 515 U.S. at 486, 115 S.Ct. 2293.

Likewise, the First Circuit, applying *Sandin*, held that the state's revocation of an inmate's almost four year participation in a work release program did not impose an atypical hardship and, therefore, "did not affect any state-created liberty interest." *Dominique v. Weld*, 73 F.3d 1156, 1160–1161 (1st Cir.1996). Hence, the state's revocation of the program and the return of the inmate to the prison population did not violate the Due Process Clause. *Dominique v. Weld*, 73 F.3d at 1161.

■ The restraint imposed by the state in the case at bar consists of the loss of library privileges for one week, exclusive of privileges to the law library. Such

---

6. This argument is addressed in part VI *infra*.

a restraint falls well below the kind of atypical and significant hardship in relation to ordinary prison life which is necessary to invoke the procedural protections of the Due Process Clause. Thus, to the extent that Sabazz' fifth and sixth causes of action attempt to raise a violation of the Due Process Clause under section 1983, the claims fail to state a claim for relief.[7]

## II. *Certiorari under Chapter 249*

■ Defendants assert that Shabazz' failure to file a certiorari action in state court bars him from proceeding in federal court. They contend that the 60 day time limit of chapter 249 requires dismissal of the complaint.

■ It is true that, "Inmates challenging alleged improprieties in prison disciplinary proceedings under State law must proceed by way of an action in the nature of certiorari."[8] *Pidge v. Superintendent, MCI–Cedar Junction,* 32 Mass. App.Ct. 14, 584 N.E.2d 1145, 1148 (1992); *accord Duffy v. Massachusetts Department of Corrections,* 746 F.Supp. 232, 233 (D.Mass.1990); *Stokes v. Commissioner of Correction,* 26 Mass.App.Ct. 585, 530 N.E.2d 801, 802 n. 2 (1988), *review denied,* 403 Mass. 1106, 532 N.E.2d 690 (1988). Where, as here, an inmate challenges the failure of prison officials to adhere to prison regulations in his own individual disciplinary proceeding, the appropriate vehicle is an action in the nature of certiorari under chapter 249. *McLellan v. Commissioner of Correction,* 29 Mass.App.Ct. 933, 558 N.E.2d 3, 4 (1990); *Ford v. Commis-*

---

7. Defendants imply that *Sandin* also precludes Shabazz' due process claims under the state constitution. (Docket Entry # 120). To support this assertion, they cite to *Hastings v. Commissioner of Correction,* 424 Mass. 46, 674 N.E.2d 221 (1997), and *Dominique v. Weld,* 73 F.3d 1156 (1st Cir.1996).

The Supreme Judicial Court ("SJC") in *Hastings,* however, discussed *Sandin* solely in relation to the federal due process claim. In rejecting the due process claim under the state constitution and without citing to *Sandin,* the SJC reasoned that the state statute and the state regulations governing the transfer at issue did "not limit the broad discretion afforded prison officials." *Hastings v. Commissioner of Correction,* 674 N.E.2d at 225. Other state court cases similarly reject state due process claims on grounds other than *Sandin* while simultaneously dismissing the federal due process claims based on *Sandin.* See, e.g., *Abdullah v. Secretary of Public Safety,* 42 Mass.App.Ct. 387, 677 N.E.2d 689, 693, *review denied,* 425 Mass. 1101, 680 N.E.2d 101 (1997).

The First Circuit in *Dominique* also did not address the state law claims inasmuch as the lower court dismissed the claims without prejudice under 28 U.S.C. § 1367(c). Rather, the court decided the federal due process issue of whether the plaintiff had a liberty interest under state regulations or a community work release agreement under the Fourteenth Amendment. *Dominique v. Weld,* 73 F.3d at 1158–1160. In addition to a procedural due process challenge under section 1983, Shabazz' fifth and sixth causes of action raise claims under state statutes, state regulations and the state constitution. As noted in *Sandin,* notwithstanding the lack of a due process claim under section 1983, prisoners retain other protections from arbitrary state actions under the First and Eighth Amendments "and may draw upon internal prison grievance procedures and state judicial review where available." *Sandin v. Conner,* 515 U.S. at 487 n. 11, 115 S.Ct. 2293; *accord McGuinness v. Dubois,* 75 F.3d 794, 798 n. 5 (1st Cir.1996) (citing *Sandin v. Conner,* 515 U.S. at 487 n. 11, 115 S.Ct. 2293, and acknowledging that the plaintiff could pursue state judicial review if state officials arbitrarily violated state regulations).

Shabazz' fifth and sixth causes of action seek such review by citing chapter 249 which, within strict time restraints, allows for state judicial review of prison disciplinary hearings. Shabazz' first and second causes of action involve allegations of the violation of his First Amendment rights. These and the remaining causes of action also do not involve allegations of procedural due process violations. "'*Sandin* did not affect substantive constitutional rights, nor did *Sandin* eliminate challenges to retaliatory discipline.'" *Higgins v. Coombe,* 1997 WL 328623 at * 9 (S.D.N.Y. June 16, 1997). Defendants' argument based on *Sandin,* therefore, only results in the dismissal of the federal procedural due process claims in the fifth and sixth causes of action.

8. The Massachusetts three year statute of limitations applies to a section 1983 claim as opposed to the 60 day limitations period in chapter 249. *See Pidge v. Superintendent, MCI–Cedar Junction,* 584 N.E.2d at 1148.

*sioner of Correction,* 27 Mass.App.Ct. 1127, 537 N.E.2d 1265, 1266, *review denied,* 405 Mass. 1202, 541 N.E.2d 344 (1989); *Jordan v. Dubois,* 1999 WL 317344 (Mass.Super. May 1999)[9] ("remedy for failure to adhere to regulations in prison disciplinary proceedings is an action in the nature of certiorari under" chapter 249); *Turner v. Dubois,* 1994 WL 902934 at * 2 (Mass.Super. Nov.9, 1994). Consequently, even though Shabazz cites to chapter 30A and the provisions of the Code of Massachusetts Regulations in his fifth and sixth causes of action, the proper cause of action is an action in the nature of certiorari under chapter 249.[10]

██ "Certiorari actions must be commenced within sixty days after the conclusion of the proceeding being challenged." *Pidge v. Superintendent, MCI–Cedar Junction,* 584 N.E.2d at 1148. Failure to comply with the 60 day period constitutes a " 'serious misstep' " and "is grounds for dismissal." *Bielawski v. Personnel Administrator of the Division of Personnel Administration,* 422 Mass. 459, 663 N.E.2d 821, 826 n. 13 (1996); *see, e.g., Turner v. Dubois,* 1994 WL 902934 at * 2 (Mass.Super. Nov.9, 1994) (dismissing challenge to disciplinary hearing as untimely under chapter 249). The 60 day period begins to run on the date of the last administrative act concerning the challenged disciplinary proceeding. *See, e.g., Pidge v. Superintendent, MCI–Cedar Junction,* 584 N.E.2d at 1148 (noting that the plaintiff did not file the action within 60 days of "the last administrative action"); *Duffy v. Massachusetts Department of Corrections,* 746 F.Supp. at 233 (the plaintiff failed to file within 60 days of the final step in the disciplinary proceeding); *LeMay v. Dubois,* 1998 WL 151174 at * 7

(Mass.Super. March 23, 1998) (limitations period began to run on "date of last administrative action by the Commissioner concerning good time forfeiture").

██ In the case at bar, Matesanz denied Shabazz' appeal on December 28, 1995. The denial was delivered to Shabazz on December 29, 1995. The Clerk received Shabazz' complaint and motion to proceed *in forma pauperis* on February 27, 1996.[11] "For statute of limitations purposes, a complaint in an action where leave to proceed *in forma pauperis* is requested is generally deemed to have been filed on the day the motion is received by the Clerk of the Court." *McGuinness v. DuBois,* 1995 WL 169500 at * 9 n. 4 (D.Mass. March 15, 1995) (construing 60 day limitations period under chapter 249), *aff'd in part and rev'd in part on other grounds,* 75 F.3d 794 (1st Cir.1996). Sixty days from the December 28, 1995 denial of the appeal is February 26, 1996, making the causes of action under chapter 249 untimely. Sixty days from when the denial was delivered to Shabazz, however, is February 27, 1996, making the causes of action under chapter 249 timely.

██ Although the 60 day period "has been strictly applied, no court has decided whether the deadline begins on the day the decision is actually made . . . or on the day the aggrieved party actually received notice of the decision." *Vembu v. The University of Massachusetts,* 1998 WL 761499 at * 2 (Mass.Super. Oct.23, 1998). Filling this void, the court in *Vembu* determined that the 60 day period began to run when the plaintiff received notice of the decision on June 4, 1998, as opposed to the May 28, 1998 date of the Chancellor of the University of Massachusetts' decision.[12] *Vembu*

9. Page numbers and the exact date for this opinion are not available.

10. Defendants' compliance with the relevant regulations is nevertheless the underlying inquiry. *See, e.g., Stokes v. Commissioner of Correction,* 530 N.E.2d at 802–804; *Jordan v. Dubois,* 1999 WL 317344 (Mass.Super. May 1999).

11. The district judge allowed the motion to proceed *in forma pauperis* on April 19, 1996.

12. The court based its decision on "the fact that the purpose of certiorari action is to provide 'a highly remedial salutary procedure, founded upon a sense of justice, to relieve against wrongs otherwise irremediable.' " *Vembu v. The University of Massachu-*

*v. The University of Massachusetts*, 1998 WL 761499 at * 3 (Mass.Super. Oct.23, 1998). Thus, even though a motion for reconsideration does not start the limitations period anew, *see Malone v. Civil Service Commission*, 38 Mass.App.Ct. 147, 646 N.E.2d 150, 151 (1995), following the lead and the reasoning of the court in *Vembu*, this court finds that the 60 days limitations period began to run on December 29, 1995.[13] The actions in the nature of certiorari challenging the December 1, 1995 disciplinary hearing in the fifth and the sixth causes of action are therefore timely.[14]

▮ In the event this court has federal question jurisdiction under one of Shabazz' causes of action, 28 U.S.C. § 1367(a) operates to confer supplemental jurisdiction to hear "state-law claims that arise from the same nucleus of operative facts."[15] *Roche v. John Hancock Mutual Life Insurance Company*, 81 F.3d 249, 256 (1st Cir.1996); *accord United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("state and federal claims must derive from a common nucleus of operative fact" and are such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding"). Defendants' argument that Shabazz failed to file a timely certiorari action under chapter 249 and that such failure requires dismissal of the entire complaint is therefore unavailing.

### III. *Edwards v. Balisok*

▮ Defendants next submit that the Supreme Court's decisions in *Edwards v.*

*Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), and *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), foreclose Shabazz' claims of improper disciplinary procedures including his allegation of retaliatory disciplinary charges. Defendants reason that the disciplinary hearing and resulting sanction have not been vacated and that a challenge to the exclusion of witnesses at the hearing, to the lack of sufficient evidence to support the finding[s] and to the retaliatory nature of the charges necessarily implies the invalidity of the finding[s] which resulted in the one week loss of library privileges.

A close analysis of Supreme Court precedent and the concurring opinions therein, as set forth in a well reasoned opinion by the Second Circuit, *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir.1999), however, demonstrates that defendants' argument is misplaced. In *Heck*, the plaintiff brought a section 1983 action against state court prosecutors and police investigators involved in his state court conviction for involuntary manslaughter. *Heck v. Humphrey*, 512 U.S. at 478–479, 114 S.Ct. 2364. Without seeking release from custody, the plaintiff in *Heck* sought monetary damages due to the defendants' knowing destruction of exculpatory evidence and unlawful investigatory practices. *Heck v. Humphrey*, 512 U.S. at 479, 114 S.Ct. 2364. After analogizing section 1983 actions to malicious prosecution claims which require termination of the prior criminal proceeding in favor of the accused, the Supreme Court held that:

---

*setts*, 1998 WL 761499 at * 3 (Mass.Super. Oct.23, 1998).

**13.** In addition, the complaint does not indicate whether an administrative official actually delivered the denial to Shabazz. If this occurred on December 29, 1995, then it is conceivable that this was the last administrative act concerning the challenged disciplinary proceeding. *See Guzman v. Board of Assessors of Oxford*, 24 Mass.App.Ct. 118, 506 N.E.2d 1168, 1170 (construing former time period in chapter 249 as beginning on the date when the official mailed the notice), *re-*

*view denied*, 400 Mass. 1103, 509 N.E.2d 1202 (1987).

**14.** Both the fifth and the sixth causes of action cite to chapter 249.

**15.** Section 1367(a) provides that, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck v. Humphrey,* 512 U.S. at 486–487, 114 S.Ct. 2364. Consequently, until the state court conviction in *Heck* was invalidated, the plaintiff's section 1983 claim was not cognizable. *Heck v. Humphrey,* 512 U.S. at 487, 114 S.Ct. 2364.

In 1997, the Supreme Court extended the *Heck* ruling to an inmate's procedural due process section 1983 challenge to a prison disciplinary proceeding which resulted in the loss of good time credits thereby affecting the duration of the plaintiff's confinement.[16] *Edwards v. Balisok,* 117 S.Ct. at 1589. Although the plaintiff in *Edwards* also received disciplinary sanctions of ten days in isolation and 20 days in segregation, the Supreme Court "focused exclusively on the revocation of his good-time credits which, of course, affected the length of his overall sentence." *Jenkins v. Haubert,* 179 F.3d at 25 (2d Cir.1999). Even though the plaintiff did not request restoration of good time credits due to the holding in *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973),[17] the Supreme Court nonetheless

found that the allegations of deceit and bias on the part of the disciplinary hearing officer necessarily implied "the invalidity of the punishment imposed." *Edwards v. Balisok,* 117 S.Ct. at 1586–1587 & 1589. Accordingly, the section 1983 claim for damages was not cognizable. *Edwards v. Balisok,* 117 S.Ct. at 1589.

The decisions of *Preiser, Heck* and *Edwards* "generated confusion in the lower courts, especially with respect to the question of whether an intra-prison disciplinary sanction that does not affect the length of a prisoner's overall confinement constitutes a 'conviction or sentence' within the meaning of the *Heck* rule." *Jenkins v. Haubert,* 179 F.3d at 25 (2d Cir.1999). Although few circuits have directly addressed the issue, the Seventh Circuit applied *Heck* to dismiss without prejudice a section 1983 action challenging a disciplinary action which resulted in only disciplinary segregation. *Stone–Bey v. Barnes,* 120 F.3d 718, 721 & 723 (7th Cir.1997); *see Jenkins v. Haubert,* 179 F.3d at 25 (2d Cir.1999). In contrast, the Court of Appeals for the District of Columbia declined to apply *Heck* to a former inmate's section 1983 action for damages challenging his procedurally improper placement in administrative segregation. *Brown v. Plaut,* 131 F.3d 163, 166–169 (D.C.Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2346, 141 L.Ed.2d 716 (1998); *see Jenkins v. Haubert,* 179 F.3d at 25 (2d Cir.1999). The issue is one of first impression in this circuit.[18]

**16.** Similar to Shabazz' sixth cause of action, the plaintiff in *Edwards* alleged that the hearing officer improperly denied him the opportunity to present testimony from witnesses with exculpatory information. *Edwards v. Balisok,* 117 S.Ct. at 1588. The plaintiff also contended that the hearing officer was biased. *Edwards v. Balisok,* 117 S.Ct. at 1588.

**17.** The 1973 decision of *Preiser v. Rodriguez* teaches that a habeas corpus petition, with its concomitant requirement of the exhaustion of state court remedies, is the exclusive means for a person "in custody" to attack the fact or duration of his confinement. *Preiser v. Rodri-*

*guez,* 411 U.S. at 489–490 & 500 (state prisoner's section 1983 action for injunctive relief seeking restoration of good time credits lost due to disciplinary proceeding).

**18.** The First Circuit in *White v. Gittens,* 121 F.3d 803 (1st Cir.1997), applied the *Heck* and *Edwards* decisions to bar a released prisoner's section 1983 due process attack on the revocation of his parole because a favorable finding "would necessarily call into question the validity of the state's decree revoking his parole and ordering him back to prison." *White v. Gittens,* 121 F.3d at 807.

Joining the Court of Appeals for the District of Columbia, the Second Circuit in *Jenkins* held that a prisoner's due process challenge to "the validity of a disciplinary or administrative segregation sanction that does not affect the overall length of the prisoner's confinement is not barred by *Heck* and *Edwards*." *Jenkins v. Haubert,* 179 F.3d at 26–27 (2d Cir.1999); *accord Brown v. Plaut,* 131 F.3d at 168 (Supreme Court "has never deviated from *Preiser's* clear line between challenges to the fact or length of custody and challenges to the conditions of confinement"). Like the plaintiff in *Jenkins,* Shabazz' section 1983 attack on the disciplinary hearing due to both improper procedures and retaliatory conduct simply does not affect the fact or duration of his confinement. As fully discussed in *Jenkins,* "the [Supreme] Court has never announced that the *Heck* rule bars a prisoner's section 1983 challenge to an administrative or disciplinary sanction that does not affect the overall length of his confinement." *Jenkins v. Haubert,* 179 F.3d at 26–27 (2d Cir.1999). The only sanction imposed against Shabazz was a one week loss of library privileges. Inasmuch as the disciplinary sanction only affected the conditions of Shabazz' confinement, Shabazz has a cognizable section 1983 cause of action. *See, e.g., Green v. New York City Department of Correction,* 1999 WL 219911 at * 7 (S.D.N.Y. April 15, 1999) (discussing *Heck* and *Edwards* and citing *Preiser* for the conclusion that the due process challenge to disciplinary proceeding resulting in 90 days punitive segregation was cognizable).

Moreover, although not necessary to this court's conclusion, it is worth recognizing that the concurring opinions in *Heck v. Humphrey,* 512 U.S. at 500, 114 S.Ct. 2364 (Souter, J., concurring), and *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 989–990, 140 L.Ed.2d 43 (1998) (Souter, J., concurring), reveal that now five justices "would limit *Heck* and its progeny to petitioners who attempt to bring a § 1983 action directly or indirectly challenging a conviction

or disciplinary matter when such plaintiffs are 'in custody' and have an available federal remedy in habeas corpus." [19] *Johnson v. Freeburn,* 29 F.Supp.2d 764, 775 (E.D.Mich.1998) (discussing concurring opinions at length); *see Jenkins v. Haubert,* 179 F.3d at 26 (2d Cir.1999) (also discussing concurring opinions in *Heck* and *Spencer* and concluding that they reveal "that five justices hold the view that, where federal habeas corpus is not available to address constitutional wrongs, § 1983 must be"). In other words, these justices would apply *Heck* only where the plaintiff has an available federal habeas corpus remedy. *Jenkins v. Haubert,* 179 F.3d at 26 (2d Cir.1999). Even assuming the existence of a federal habeas remedy during the one week period in which Shabazz could not use the library, he is no longer "in custody" with respect to this disciplinary sanction thereby making any federal habeas corpus action unavailable. *See Johnson v. Freeburn,* 29 F.Supp.2d at 776 n. 3.

In sum, following the Second Circuit's reasoning in *Jenkins,* Shabazz' causes of action challenging the disciplinary proceeding are properly characterized as challenges to his conditions of confinement and not foreclosed by "*Heck's* favorable termination requirement." *Jenkins v. Haubert,* 179 F.3d at 26–27 (2d Cir.1999); *see also Brown v. Plaut,* 131 F.3d at 168; *Green v. New York City Department of Correction,* 1999 WL 219911 at * 7 (S.D.N.Y. April 15, 1999).

### IV. *The PLRA*

■ Defendants contend that section 1997e(a) of the PLRA, which mandates exhaustion of available administrative remedies prior to filing suit, requires dismissal of the complaint. They further assert that section 1997e(e) of the PLRA, which requires a physical injury in order to recover for mental or emotional injury, requires dismissal of Shabazz' entire section 1983 claim.

---

**19.** The 1998 *Spencer* decision post-dates the

First Circuit's 1997 *Gittens* decision.

Defendants, however, overlook that these sections of the PLRA do not apply retroactively to complaints filed prior to April 26, 1996, when the President signed the act into law. The Clerk received the complaint for filing and the district court allowed Shabazz leave to proceed *in forma pauperis* prior to April 26, 1996.

Although the issue is one of first impression in this circuit, this court is not without guidance. The second, sixth, and ninth circuits unanimously conclude that section 1997e(a) does not apply retroactively to actions pending as of the time of the PLRA's enactment. *Salahuddin v. Mead*, 174 F.3d 271, 1999 WL 235620 at * 5 (2d Cir. April 22, 1999); *Bishop v. Lewis*, 155 F.3d 1094, 1096 (9th Cir.1998); *Wright v. Morris*, 111 F.3d 414, 418 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997). In dicta, the Tenth Circuit and the Court of Appeals for the District of Columbia similarly conclude that the PLRA's amendments to section 1997e only apply to actions filed on or after April 26, 1996. *Garrett v. Hawk*, 127 F.3d 1263, 1266 (10th Cir.1997); *In Re Smith*, 114 F.3d 1247, 1248 n. 1 (D.C.Cir.1997).

■ "When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). A plain reading of the statutory text placed in the context of the statute as a whole, *see generally Goncalves v. Reno*, 144 F.3d 110, 127 (1st Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999), evidences that Congress "expressly prescribed the statute's proper reach." *Landgraf v. USI Film Products*, 511 U.S. at 280, 114 S.Ct. 1483.

Section 1997e(a) states that, "No action *shall be brought* with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). "Shall" is an imperative term which speaks to future conduct. *Salahuddin v. Mead*, 174 F.3d 271, 1999 WL 235620 at * 3 (2d Cir. April 22, 1999). As succinctly explained by the court in *Salahuddin*, "Even the most demanding among us cannot reasonably expect that a person 'shall' do something yesterday." *Salahuddin v. Mead*, 174 F.3d 271, 1999 WL 235620 at * 3 (2d Cir. April 22, 1999). The natural construction of the entire phrase "shall be brought" is that the phrase "governs the circumstances in which an action yet to be initiated may 'be brought.'" *Salahuddin v. Mead*, 174 F.3d 271, 1999 WL 235620 at * 3 (2d Cir. April 22, 1999). In light of this language, section 1997e(a) governs actions which "have yet to be brought" as opposed to actions which "have already been filed." *Bishop v. Lewis*, 155 F.3d at 1095; *see also Wright v. Morris*, 111 F.3d at 418 (section "governs the bringing of new actions, not the disposition of pending cases").

■ The broader context of the entire statutory text confirms this view. In a separate section of the PLRA that governs the requirements for prospective relief, 18 U.S.C. § 3626 ("section 3626"), Congress expressly allowed for retroactive application. Section 802(b)(1) of the PLRA provides that section 3626 "shall apply with respect to all prospective relief whether such relief was originally granted or approved before, on, or after the date of the enactment of this title." 18 U.S.C. § 3626 (historical and statutory notes). "'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'" *Goncalves v. Reno*, 144 F.3d at 129. Consequently, if Congress intended to apply section 1997e(a) retroactively to cases pending on April 26, 1996, "it would have employed the same language it used in § 802(b)(1) to make that intent clear." *Wright v. Morris*, 111 F.3d at 418.

Having uncovered nothing to the contrary in the legislative history, section 1997e(a) does not apply to Shabazz' complaint inasmuch as it was filed prior to the April 26, 1996 enactment of the PLRA.[20]

Alternatively, *Langraff*'s second prong yields the same conclusion. Under this analysis, determining whether a statute has retroactive effect involves assessing "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Products*, 511 U.S. at 280, 114 S.Ct. 1483. Shabazz could not have been expected to foresee the enactment of a mandatory administrative exhaustion requirement replacing the PLRA's former discretionary exhaustion provision. Such a requirement imposes new duties upon Shabazz to exhaust administrative remedies which were not present at the time of the conduct in question. The requirement also impairs the rights he had when he acted which were not subject to a mandatory exhaustion requirement. Finally, the presumption against retroactivity, *Landgraf v. USI Film Products*, 511 U.S. at 265, 114 S.Ct. 1483 is particularly apropos in light of the cautionary statement in *Landgraf* that, "A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime." *Landgraf v. USI Film Products*, 511 U.S. at 275 n. 29, 114 S.Ct. 1483; *accord Wright v. Morris*, 111 F.3d at 419.

A similar analysis applies in finding that section 1997e(e) does not apply retroactively to Shabazz' action. Section 1997e(e) states that, "No Federal civil action *may be brought* by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e)

(emphasis added). Although the First Circuit has not addressed the retroactive application of this section, other courts consider the section inapplicable to cases pending on the date of the PLRA's enactment. *Craig v. Eberly*, 164 F.3d 490, 493–494 (10th Cir.1998); *Swan v. Banks*, 160 F.3d 1258, 1259 (9th Cir.1998); *Cunningham v. Eyman*, 11 F.Supp.2d 969, 972 (N.D.Ill.1998); *Friedland v. Fauver*, 6 F.Supp.2d 292, 310 (D.N.J.1998).

The similarity of the language "may be brought" in section 1997e(e) to the language "shall be brought" in section 1997e(a) leads to the same conclusion. A person may not bring an action yesterday. Thus, the phrase as a whole speaks to future conduct. *See Salahuddin v. Mead*, 174 F.3d 271, 1999 WL 235620 at * 3 (2d Cir. April 22, 1999). The inclusion of express language that section 3626 shall apply to prospective relief granted "before, on, or after the date of the enactment of" the PLRA, 18 U.S.C. § 3626 (historical and statutory notes), and the exclusion of such language in section 1997e(e) indicate a Congressional intent not to retroactively apply section 1997e(e) to cases pending on April 26, 1996. Congress therefore expressly prescribed the proper reach of section 1997e(e).

In the alternative, the retroactive application of section 1997e(e) would have an impermissible effect within the meaning of *Landgraf*'s second prong analysis. At the time of the incident, Shabazz had the right to recover for mental and emotional injuries irrespective of the existence of an accompanying injury. *See Cunningham v. Eyman*, 11 F.Supp.2d at 972. Removing this right impairs a right Shabazz had at the time of the incident. *See Cunningham v. Eyman*, 11 F.Supp.2d at 972.

In sum, neither section 1997e(a) nor section 1997e(e) apply retroactively to Shabazz' action. The PLRA therefore does

---

**20.** In any event, Shabazz appealed the guilty finding to Matesanz thereby exhausting his administrative remedies. *See Jenkins v. Haubert*, 179 F.3d at 23 n. 1 (2d Cir.1999); 103 C.M.R. § 430.18. Contrary to defendants' argument, section 249, a state statute, is not an administrative remedy within the meaning of section 1997e.

not require Shabazz to exhaust his administrative remedies nor bar his right to recover mental or emotional injuries absent a physical injury.

## V. *Retaliation for Filing Grievance*

■ Defendants move to dismiss Shabazz' claim that Cole filed false disciplinary charges in retaliation for Shabazz filing a grievance against her. The grievance or letter dealt with the propriety of charging inmates for the photocopying of legal materials. Defendants argue that there was a proper purpose for Cole to issue a disciplinary report in light of Shabazz' loud and agitated behavior in the library as shown in the disciplinary report and through Cole's testimony at the disciplinary hearing. Thus, according to defendants, Shabazz fails to show that he would have received the disciplinary report "but for" the impermissible retaliatory purpose.

■ In general, in order to sustain a claim of retaliatory discipline, the plaintiff must first show "that the disciplined conduct was constitutionally protected." *Graham v. Henderson*, 89 F.3d 75, 80 (2nd Cir.1996). Second, the plaintiff "bears the burden of showing that ... the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." *Graham v. Henderson*, 89 F.3d at 79. In the event the plaintiff succeeds in satisfying these two burdens, "the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff 'even in the absence of the protected conduct.'" *Graham v. Henderson*, 89 F.3d at 79 (quoting *Mount Healthy School District v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).[21]

Shabazz' right to be protected from retaliatory conduct "is 'substantive rather than procedural.'" *Graham v. Henderson*, 89 F.3d at 80. Defendants'

citation and reliance on *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), a procedural due process case, is therefore not particularly germane to the issue of whether the complaint fails to state a claim that Cole engaged in retaliatory conduct. *See Graham v. Henderson*, 89 F.3d at 80 (criticizing district court's reliance on *Hill*).

■ Shabazz undoubtedly has a First Amendment right "to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995); *accord Graham v. Henderson*, 89 F.3d at 80 ("retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments"). Whether Shabazz' filing of the grievance or letter to Matesanz was a substantial or motivating factor for Cole to file the disciplinary charges presents a separate inquiry. A retaliatory state of mind, however, is not ordinarily "susceptible to proof by direct evidence." *Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir.1980). On a motion to dismiss for failure to state a claim, it is appropriate to infer a retaliatory state of mind from circumstantial evidence. Such evidence may consist of a chronology of events which includes a lawsuit complaining of prison conditions lodged against prison officials coupled with allegations of tampering with legal mail and prohibiting an inmate from bringing papers to his attorneys. *Ferranti v. Moran*, 618 F.2d at 892 (reversing lower court's allowance of motion to dismiss retaliation claim).

Similarly, the First Circuit in *McDonald v. Hall*, 610 F.2d 16 (1st Cir.1979), re-

---

**21.** The *Mount Healthy* standard for a section 1983 retaliation claim, a 1977 decision summarized in *Graham*, was clearly established law at the time the incidents took place in the fall of 1995. *See also McDonald v. Hall*, 610

F.2d 16, 18 (1st Cir.1979) (a 1979 First Circuit decision recognizing an inmate's section 1983 retaliatory transfer claim and citing *Mount Healthy*).

versed the lower court's allowance of a motion to dismiss a retaliatory transfer claim inasmuch as the plaintiff/inmate had a right not to be transferred for the exercise of his litigation activities of assisting other inmates. Again, the complaint raised a chronology of events which supported an inference of retaliation. *See McDonald v. Hall*, 610 F.2d at 18. Noting that the plaintiff alleged that the defendants transferred him in retaliation for exercising his First Amendment right to petition the courts, the court found that the plaintiff properly stated a claim for relief. *McDonald v. Hall*, 610 F.2d at 18. Although the court cautioned that the plaintiff might have a difficult time proving that retaliation was the actual motivating factor for his transfer, it nonetheless found that the complaint survived dismissal. *McDonald v. Hall*, 610 F.2d at 18–19.

The complaint and attached documents in the case at bar provide even greater specificity and evidence of retaliatory conduct than the complaints at issue in *McDonald* and *Ferranti*. Taking the facts and reasonable inferences therefrom as true, Shabazz showed Cole the letter to Matesanz which complained about her charging inmates for photocopying legal materials in violation of 103 C.M.R. § 478.00.[22] Cole filed disciplinary charges against Shabazz on or about the same day that Shabazz showed her the grievance or letter. *See Colon v. Coughlin*, 58 F.3d at 872 ("temporal proximity between an inmate's lawsuit and disciplinary action may serve as circumstantial evidence of retaliation"). One of the charges was without merit and dismissed. One year before the incident in question, Cole lodged a disciplinary charge against Shabazz which was also without merit.

In addition, Shabazz consistently maintained a positive work record in the library. *See Colon v. Coughlin*, 58 F.3d at 872 ("evidence of prior good behavior also may be circumstantial evidence of retaliation"). Several inmates averred that Shabazz never raised his voice or acted in an agitated manner. *See Graham v. Henderson*, 89 F.3d at 81. In sum, an inference of retaliation arises sufficient to withstand defendants' motion to dismiss. *See, e.g., Ferranti v. Moran*, 618 F.2d at 892; *McDonald v. Hall*, 610 F.2d at 18.

▮ Notwithstanding this ruling, Shabazz will face a difficult burden at trial. Although the First Amendment applies in prison, "considerable deference is due to the 'expert' judgment of prison administrators." *Gomes v. Fair*, 738 F.2d 517, 524 (1st Cir.1984). Thus, although the chronology of events alleged in the complaint withstands the motion to dismiss, Shabazz cannot get to the jury if defendants produce evidence of a legitimate reason such that they would have disciplined Shabazz even in the absence of the grievance.[23] *See Layne v. Vinzant*, 657 F.2d 468, 476 (1st Cir.1981). Defendants' reliance on the testimony of Cole, which is not contained in the complaint and only briefly summarized in the written findings, and the statements in the disciplinary report, however, does not entitle them to dismissal of the complaint in light of the standard and scope of review applicable to a motion to dismiss.[24] Shabazz' first cause of action alleging that defendants retaliated against him for filing grievances therefore survives dismissal with respect to defendants' aforementioned argument.

## VI. *Verbal Threats*

▮ Shabazz' second cause of action alleges that defendants harassed him due

---

**22.** Subsection 478.11(4) prohibits charging inmates for reasonable amounts of photocopying legal materials. 103 C.M.R. § 478.11(4).

**23.** In light of the expiration of the deadline for dispositive motions, defendants must raise this issue, if at all, in a motion for judgment as a matter of law under Rule 50, Fed. R.Civ.P.

**24.** The First Circuit in *Graham v. Henderson*, 89 F.3d 75 (2nd Cir.1996), as well as in *Sires v. Berman*, 834 F.2d 9 (1st Cir.1987), reviewed motions for summary judgment allowed by the district courts.

to his race and used racial slurs against him in violation of the First and Fourteenth Amendments and his federal and state civil rights. Defendants move to dismiss the allegations of verbal harassment inasmuch as such conduct is not a constitutional violation under section 1983.

The complaint alleges that Shabazz suffered a barrage of harassment and racial slurs from Cole during the time he worked in the law library. As a result of such verbal abuse, Shabazz became ineffective in rendering assistance to other inmates.

Shabazz' section 1983 claim arises, if at all, under the Fourteenth Amendment's protection of substantive due process rights or the Eighth Amendment's prohibition against cruel and unusual punishment. *See generally Maclean v. Secor,* 876 F.Supp. 695, 699 (E.D.Pa.1995). Although the Eighth Amendment provides the more explicit source of protection in the prison context, *see Adkins v. Rodriguez,* 59 F.3d 1034, 1037 (10th Cir.1995), this court will also examine the claim in the context of substantive due process.

▇▇▇ Under the Eighth Amendment, prison officials "have a duty to provide humane conditions of confinement . . . and must take reasonable measures to guarantee the safety of prison inmates." *Giroux v. Somerset County,* 178 F.3d 28, 1999 WL 335145 at * 3 (1st Cir. May 24, 1999). In order to state a claim under the Eighth Amendment, the deprivation "must be objectively serious, i.e., the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Giroux v. Somerset County,* 178 F.3d 28, 1999 WL 335145 at * 3 (1st Cir. May 24, 1999) (internal quotation marks omitted). Second, the defendant "must have had a sufficiently culpable state of mind." *Giroux v. Somerset County,* 178 F.3d 28, 1999 WL 335145 at * 3 (1st Cir. May 24, 1999) (internal quotation marks omitted). Shabazz' claim fails under the first objective prong of the analysis.

▇▇▇ As stated by a court in this district in reviewing an Eighth Amendment claim, "it is settled that emotional damage by verbal harassment does not amount to infringement of a constitutional right, and thus is not actionable under Section 1983." *Duran v. Duval,* 1998 WL 765726 at * 3 (D.Mass. Oct.28, 1998) (noting that inmate failed to allege any physical injury resulting from verbal taunts). Other courts uniformly find that "acts of verbal harassment alone are not sufficient to state a claim under the Eighth Amendment." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 n. 11 (10th Cir.1998); *accord Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right" under section 1983); *Partee v. Cook County Sheriff's Office,* 863 F.Supp. 778, 781 (N.D.Ill.1994) (inmate's "allegations of verbal threats, racial epithets, and continued harassment" failed to meet objective component of Eighth Amendment); *Davis v. Sancegraw,* 850 F.Supp. 809, 813 (E.D.Mo.1993) ("[v]erbal insults or threats generally do not rise to the level of a constitutional violation" except where they involve "a 'wanton act of cruelty' such that the inmate is in fear of 'instant and unexpected death at the whim of his bigoted custodians' "); *see also Doyle v. Fairman,* 1996 WL 312096 at * 2 (N.D.Ill. June 7, 1996) (recognizing that "derogatory racial remarks and verbal threats by a correctional officer . . . is an insufficient ground for relief under § 1983").

Although this court does not condone the verbal abuse with the racial epithets that Shabazz received from Cole, verbal threats and insults between inmates and prison officials are a "constant daily ritual observed in this nation's prisons." *Shabazz v. Pico,* 994 F.Supp. at 475. Without more, "racial slurs do not deprive prisoners of the 'minimal civilized measure of life's necessities,' and thus do not constitute an eighth amendment violation." *Shabazz v. Pico,* 994 F.Supp. at 475. Shabazz' allegations of mental suffering to the extent that he could no longer assist in-

mates with legal matters also fail to state a claim of psychological pain sufficient to invoke the Eighth Amendment. *See generally Leonardo v. Moran*, 611 F.2d 397, 399 (1st Cir.1979); *see, e.g., Shabazz v. Pico*, 994 F.Supp. at 475.

■ Shabazz' claim of verbal harassment under the substantive component of the Fourteenth Amendment's guarantee of due process also fails. "The Supreme Court has enunciated two alternative tests by which substantive due process is examined." *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991). The first theory involves "conscience shocking" behavior. *Pittsley v. Warish*, 927 F.2d at 6. Under the second theory, the "plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause." *Pittsley v. Warish*, 927 F.2d at 6. Although the First Circuit has "not foreclosed the possibility that words or verbal harassment may constitute 'conscious shocking' behavior in violation of substantive due process rights, ... caselaw indicates that the threshold for alleging such a claim is high." *Brown v. Hot, Sexy and Safer Productions*, 68 F.3d 525, 532 (1st Cir.1995) (high school students compelled to watch AIDS awareness assembly without parental approval was not conscience shocking), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996). Outside the prison context, neither a prosecutor conducting a press conference and encouraging the media to link the plaintiff's son to serial murders, *Souza v. Pina*, 53 F.3d 423, 424–427 (1st Cir.1995), nor a police officer's threats to two children that they would never see their father again and to their mother that he would kill her if she appeared at a complaint hearing, *Pittsley v. Warish*, 927 F.2d at 5 & 7, constituted conscience shocking behavior.[25]

Extending the substantive component of due process to prohibit verbal abuse between inmates and prison officials would involve courts in the day to day operations of prisons, *cf. Santiago de Castro v. Morales Medina*, 943 F.2d 129, 131 (1st Cir. 1991), and weaken the deference due prison officials in maintaining security. Moreover, conduct which is offensive to even " 'hardened sensibilities' " outside a prison may not be as shocking inside a prison. Without even a suggestion of physical injury, Cole's verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct.

■ Turning to the second theory, "Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *Pittsley v. Warish*, 927 F.2d at 7; *see Santiago de Castro v. Morales Medina*, 943 F.2d at 131 (substantive due process does not protect employee's right to pursue employment without emotional health risks from supervisor's verbal harassment); *see, e.g., Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir.1987) (racially derogatory remarks by arresting officer to arrestee did not violate due process inasmuch as neither defamation nor derogatory racial epithet is a deprivation of liberty under Due Process Clause); *Fernandez v. Rapone*, 926 F.Supp. 255, 263 (D.Mass.1996); *Maguire v. Municipality of Old Orchard Beach*, 783 F.Supp. 1475, 1484 (D.Me.1992) (police officer removing night stick and threatening the plaintiff with physical harm if he continued to protest did not implicate constitutional right). As discussed *infra*, Shabazz has no property interest in his law library position.

25. Similarly, a supervisor's persistent and continued criticism of an employee's work, animosity towards the employee as a result of her racial and ethnic status, harassment of the employee at her home and making the employee stand guard while the supervisor used drugs was not conscience shocking conduct under the Eighth Amendment. *DeLeon v. Little*, 981 F.Supp. 728, 731 & 735 (D.Conn.1997).

■ In sum, the weight of authority is that verbal threats, even abusive threats with racial epithets, do not, in the context of prison, violate an inmate's constitutional rights. "Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." *Jermosen v. Coughlin*, 878 F.Supp. 444, 449 (N.D.N.Y. 1995); *accord Arce v. Banks*, 913 F.Supp. 307, 309 (S.D.N.Y.1996) ("yelling, cursing, or even race-baiting does not violate any constitutionally protected rights" of the plaintiff/inmate). Shabazz is not without a recourse to state tort law which may provide him with relief such as with a cause of action for defamation. Under section 1983, however, his claim of verbal abuse fails to state a claim.

■ Shabazz' second cause of action also seeks relief under "state civil rights laws" for the alleged racial harassment and use of racial slurs on the part of Cole. Defendants move to dismiss Shabazz' claims to the extent they arise under the MCRA because Shabazz fails to allege the violation of his civil rights and/or that the alleged violation occurred in conjunction with actual or potential physical confrontation accompanied by threats.

■ In order to state a claim under sections 11H and 11I of the MCRA, "the plaintiff must prove that the defendants used 'threats, intimidation or coercion' to interfere with, or attempt to interfere with rights secured by the Constitution or laws of the United States or of the Commonwealth of Massachusetts." *Brum v. Town of Dartmouth*, 428 Mass. 684, 704 N.E.2d 1147, 1162 (1999) (affirming dismissal inasmuch as complaint failed to allege threats, intimidation or coercion). In other words, the two components of a section 11H and 11I MCRA claim are "threats, intimidation or coercion and interference with a secured right." *Banes v. Hub Folding Box Company, Inc.*, 1993 WL 818635 at * 4 (Mass.Super. Aug.3, 1993); *see also*

*French v. United Parcel Service, Inc.*, 2 F.Supp.2d 128, 133 (D.Mass.1998) (setting forth requisite elements of section 11 claim).

As noted by the SJC, "Our cases holding that the Massachusetts Civil Rights Act was violated have involved actual or potential *physical* confrontation involving a threat of harm." *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 631 N.E.2d 985, 989 n. 8 (emphasis added), *cert. denied*, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 122 (1994); *accord Noel v. Town of Plymouth*, 895 F.Supp. 346, 355 (D.Mass.1995) ("cases holding that the MCRA was violated have featured 'actual or potential physical confrontations, involving a threat of harm'"); *see also Bally v. Northeastern University*, 403 Mass. 713, 532 N.E.2d 49, 53 (1989). The SJC in *Longval v. Commissioner of Correction*, 404 Mass. 325, 535 N.E.2d 588, 593 (1989), collected various examples in the caselaw of "the sort of threatening, intimidating or coercive conduct that would be a violation of" the MCRA. Examples in the cited caselaw include instances involving the threat of arrest and the threat of disrupting performances involving threats to the physical safety of the audience. *Longval v. Commissioner of Correction*, 535 N.E.2d at 593.

■ In the case at bar, Shabazz fails to allege that Cole subjected him to actual or potential physical harm.[26] Simply using racial slurs, as alleged in the second cause of action, is insufficient to state a claim under the MCRA. *See generally Longval v. Commissioner of Correction*, 535 N.E.2d at 593 ("direct violation of a person's rights does not by itself involve threats, intimidation, or coercion" under the MCRA). Likewise, the "threat" of the loss of at will employment also fails to state a claim under the MCRA. *French v. United Parcel Service, Inc.*, 2 F.Supp.2d at 133 (summarizing case where loss of at will employment

---

**26.** Shabazz' allegation that "Cole's threats, intimidation and coercion of [him] were a violation of [his] constitutional and civil

rights" (Docket Entry # 6, ¶ 16) is conclusory to the extent not supported by facts or reasonable inference therefrom in the complaint.

insufficient); *see Webster v. Motorola, Inc.*, 418 Mass. 425, 637 N.E.2d 203, 206 (1994). Shabazz' second cause of action as well as his fourth cause of action alleging the loss of his law clerk position therefore do not survive defendants' motion to dismiss the MCRA claim.

 Shabazz' third cause of action, however, survives defendants' motion to dismiss the MCRA claim. Therein, Shabazz alleges that Cole issued false disciplinary reports based on race. The body of the complaint alleges that Cole consistently subjected Shabazz to racial harassment. Cole's harassment included repeated attempts to have Shabazz withdraw his resignation which noted her racist remarks. It is reasonably inferred from the complaint that Cole threatened to take the adverse administrative action of filing the false disciplinary charges in an attempt to coerce Shabazz into withdrawing the resignation and/or grievance which he was not lawfully compelled to do. Her consistent and persistent racial slurs against Shabazz indicate some evidence of animus, at least for purposes of surviving a motion to dismiss.

 Adverse administrative action which is part of a scheme of harassment may amount to the required threats, intimidation or coercion for purposes of the MCRA. *See Smith v. Town of Longmeadow*, 29 Mass.App.Ct. 599, 563 N.E.2d 697, 699 (1990). "In order to establish a 'scheme of harassment' there must be some evidence of animus against the plaintiffs or their project and an attempt to thwart the project through adverse administrative action unrelated" to legitimate concerns. *Murphy v. Town of Duxbury*, 40 Mass.App.Ct. 513, 665 N.E.2d 1014, 1018, *review denied*, 423 Mass. 1105, 668 N.E.2d 356 (1996). Moreover, Cole's use of false disciplinary charges as a means to coerce Shabazz into withdrawing his resignation may also constitute the required threats, intimidation or coercion for purposes of the MCRA. *See Freeman v. Planning Board of West Boylston*, 419 Mass. 548, 646 N.E.2d 139, 149, *cert. denied*, 516 U.S. 931, 116 S.Ct. 337, 133 L.Ed.2d 235 (1995); *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 631 N.E.2d at 990.

## VII. Loss of Work Assignment

 In the fourth cause of action, Shabazz alleges that defendants constructively discharged him from his position in the law library in violation of the First and Fourteenth Amendments and his state civil rights. Defendants submit that Shabazz has no constitutional right to a particular work assignment in prison.

 To the extent Shabazz raises a due process claim under section 1983, "it is clear that unless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to either obtain or maintain prison jobs." *Dupont v. Saunders*, 800 F.2d 8, 10 (1st Cir.1986). Regulations governing internal prison employment do not confer any procedural or substantive rights not otherwise provided by state or federal law. 103 C.M.R. § 455.02; *see also Jackson v. Hogan*, 388 Mass. 376, 446 N.E.2d 692, 695 (1983). Furthermore, under *Sandin*, the loss of prison employment does not create an atypical and significant hardship. *Hernandez v. Gonzalez*, 1996 WL 377148 at * 2 (D.P.R. June 28, 1996). Shabazz therefore lacks any federal due process claim with respect to the loss of his law library position.

Assuming *arguendo* that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), applies to Shabazz' law library position, *see Baker v. McNeil Island Corrections Center*, 859 F.2d 124, 128 (9th Cir.1988), and that Shabazz raises a constructive discharge claim in his fourth cause of action, it is subject to *sua sponte* dismissal under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted or, if not retroactive, alternatively under 28 U.S.C. § 1915(d) as frivolous.

■ First, there is no indication that Shabazz filed an administrative charge with the appropriate state agency. Such a filing is "a prerequisite to commencing a civil action for employment discrimination" under Title VII. *Lattimore v. Polaroid Corporation,* 99 F.3d 456, 464 (1st Cir.1996). Second, although a plaintiff may satisfy the third element of a *prima facie* case under the *McDonnell Douglas* framework [27] by setting forth facts of a constructive discharge, Shabazz fails to allege any facts to support the fourth element of a *prima facie* case. In particular, Shabazz fails to allege any facts indicating a continued need for someone to perform the same work as Shabazz, *see Rodriguez v. Banco Popular de Puerto Rico,* 27 F.Supp.2d at 315, or other facts sufficient to satisfy the fourth prong.

Shabazz' fourth cause of action is therefore subject to dismissal.

## VIII. *Respondeat Superior*

■ Defendants seek dismissal of Matesanz as a party on the basis that, as a supervisor, he was not personally involved in the alleged violation of Shabazz' federal constitutional rights under section 1983.[28] Shabazz' first and third causes of action constitute the remaining federal causes of action for the alleged violation of Shabazz' constitutional rights under section 1983. Matesanz' supervisory liability therefore turns on his personal involvement or causal link to the alleged deprivation of Shabazz' right to be free from retaliation for filing grievances and his right to be free from the filing of false disciplinary charges against him due to his race.

■ It is axiomatic that "[s]upervisory liability under § 1983 'cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions.'" *Matos v. Toledo Davila,* 135 F.3d 182, 192 (1st Cir.1998). Courts generally require "a showing that the superior was either a primary actor involved in, or a prime mover behind, the underlying violation." *Camilo–Robles v. Zapata,* 175 F.3d 41, 1999 WL 223051 at * 2 (1st Cir. April 20, 1999). In other words, there must be a showing of "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization." *Camilo–Robles v. Zapata,* 175 F.3d 41, 1999 WL 223051 at * 2 (1st Cir. April 20, 1999).

■ The requisite affirmative link "must amount to 'supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference.'" *Matos v. Toledo Davila,* 135 F.3d at 192 (quoting *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 902 (1st Cir.1988)); *see also Barreto–Rivera v. Medina–Vargas,* 168 F.3d 42, 48 (1st Cir. 1999) (causal connection satisfied where "'supervisor knew of, overtly or tacitly approved of, or purposefully disregarded the conduct.'"). Thus, even absent actual knowledge of the unconstitutional conduct, a supervisor "'may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or wilful blindness.'"

27. In the absence of direct evidence of racial discrimination, under the framework set out in *McDonnell Douglas:*

a plaintiff must first establish by a preponderance of the evidence that[:] (1) he or she is a member of a protected class; (2) his or her job performance was sufficient to meet his or her employer's legitimate job expectations; (3) he or she was actually or constructively discharged; and, (4) the employer sought a replacement with roughly equivalent qualifications.

*Rodriguez v. Banco Popular de Puerto Rico,* 27 F.Supp.2d 309, 312 (D.P.R.1998). "The constructive discharge doctrine applies when an employee has resigned his employment under such circumstances that his resignation is treated as a discharge for the purpose of proving a *prima facie* case of employment discrimination.'" *Marley v. United Parcel Service, Inc.,* 665 F.Supp. 119, 129 (D.R.I. 1987).

28. Accordingly, inasmuch as defendants do not argue Matesanz' lack of personal involvement in the alleged violation of Shabazz' state law or state constitutional rights, this court will not address this argument *sua sponte.*

*Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998), *cert. denied,* ——— U.S. ———, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999). Deliberate indifference, in turn, requires the plaintiff to "show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Camilo–Robles v. Hoyos,* 151 F.3d at 7 (noting that this formulation implies the necessary showing of causation as well as deliberate indifference). In addition, the causal link may be established where "there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994); *see also Braddy v. Florida Department of Labor and Employment Security,* 133 F.3d 797, 802 (11th Cir.1998) (widespread abuse sufficient to alert supervisor exists where deprivations are " 'obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences' ").

 Notice or knowledge of the conduct which was likely to lead to the constitutional violation "is a salient characteristic in determining the existence of supervisory liability." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998). Moreover, isolated instances of unconstitutional conduct as well as mere negligence on the part of the supervisor are insufficient to cerate supervisory liability. *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d at 582.

Turning to Shabazz' first cause of action, there is no indication that Matesanz was directly involved in Cole's retaliation against Shabazz for the filing of grievances. Although the complaint sets forth facts that Cole persistently verbally harassed Shabazz over a long period of time, the complaint also notes that Shabazz maintained a good work record and did not receive a disciplinary charge until November 1994. Thus, the first grievance and resulting disciplinary charge constituting retaliatory conduct occurred in November 1994.

The disciplinary charge proved to be without merit and "nothing followed" the grievance to the Unit Manager inasmuch as Shabazz agreed to withdraw or "drop" the grievance. As the Superintendent of BSCC, Matesanz "or his designee" must review all disciplinary decisions regardless of the outcome. 103 C.M.R. § 430.19. There is no evidence, however, that Matesanz received a copy of the grievance complaining of Shabazz' constructive discharge and Cole's use of expressions which allegedly damaged Shabazz' ethnic pride. On its face, the disciplinary charge provides no indication of retaliatory conduct.

The next incident of retaliatory conduct occurred when Cole lodged disciplinary charges against Shabazz in October 1995. The disciplinary charge is devoid of any indication that Cole filed the charges because of Shabazz' grievance or letter to Matesanz complaining of the charges for photocopying legal materials. Nor does Shabazz' letter to Matesanz alert him to the retaliatory nature of Cole's conduct. Rather, the letter protests the practice of charging inmates for photocopying legal materials.

Shabazz' second letter to Matesanz simply presents Shabazz' version of what transpired in the law library on or about October 25, 1995. It does not inform Matesanz that Cole filed retaliatory disciplinary charges. In fact, it makes no mention of such disciplinary charges.

Matesanz' or his designee's review of the October 1995 disciplinary charges themselves would not alert Matesanz to the retaliatory nature of the charges. Rather, a review of the charges and supporting documentation would indicate that there was a factual dispute as to what occurred with the result of one charge being dismissed and the other being upheld. Finally, Shabazz' appeal of the disciplinary finding of insolence to Matesanz accuses Cole of not being objective or reasonable in her treatment of Shabazz. The appeal fails to refer to the retaliatory nature of the filing.

Consequently, even viewing the facts and reasonable inferences therefrom in

Shabazz' favor, Cole's alleged retaliatory conduct against Shabazz for the filing of grievances consists of isolated instances insufficient to alert or notify Matesanz of the alleged unconstitutional conduct. At most, Matesanz' failure to investigate and respond to Shabazz' letters was negligent. There is no indication that Cole's practice of lodging false disciplinary charges which resulted in dismissals was widespread. Nor is the retaliatory nature of Cole's conduct readily apparent or obvious from the grievances, letters and disciplinary files.

■ For similar reasons, the alleged facts are also insufficient to support supervisory liability against Matesanz under Shabazz' third cause of action. Although Cole had a history of using racial slurs towards Shabazz,[29] she did not engage in the filing of false disciplinary reports based on Shabazz' race until, at the earliest, October 1994. Only one of the two disciplinary charges filed in November 1995 proved false. Neither the grievances, letters or disciplinary files indicate that Cole filed the charges because of Shabazz' race. Without more, two dismissed disciplinary charges would not alert or notify Matesanz that Cole was discriminating against Shabazz on the basis of his race by filing false charges. Finally, although the complaint summarily states that Matesanz "had direct knowledge of Defendant Cole's conduct," this conclusion is not logically compelled or supported by the facts. *See Cooperman v. Individual, Inc.*, 171 F.3d at 47–48.

Matesanz is therefore not liable for the alleged violation of Shabazz' federal constitutional rights under section 1983 in the first and third causes of action.[30]

IX. *Official Capacity*

Shabazz sued both Cole and Matesanz in their individual and official capacities. (Docket Entry # 6, ¶¶ 3 & 4). Defendants

move to dismiss any section 1983 claims filed against them in their official capacity because such claims are, in reality, against the Commonwealth. (Docket Entry # 79, p. 5). They additionally assert that defendants are not "persons" within the meaning of the MCRA. (Docket Entry # 79, n. 6).

■ It is well settled that monetary damages "may not be assessed against state officials, sued in their official capacities under the federal civil rights statute, absent state consent." *Darul–Islam v. Dubois*, 997 F.Supp. 176, 178 (D.Mass. 1998). The complaint, however, also seeks declaratory and injunctive relief. In addition, Shabazz may sue defendants in their individual capacities for monetary damages under section 1983. *See Darul–Islam v. Dubois*, 997 F.Supp. at 178.

■ Similarly, neither the Commonwealth nor its officials sued in their official capacity are "persons" for purposes of a claim under sections 11H and 11I of the MCRA. *Priestly v. Doucette*, 1993 WL 818695 at * 4 (Mass.Super. Dec.21, 1993); *see Commonwealth v. ELM Medical Laboratories, Inc.*, 33 Mass.App.Ct. 71, 596 N.E.2d 376, 379 (1992). Shabazz' claims against defendants in their individual capacities under the MCRA, however, survive the motion to dismiss based on defendants' argument. *See Priestly v. Doucette*, 1993 WL 818695 at * 4 (Mass.Super. Dec.21, 1993).

Shabazz' claims against defendants in their official capacities for monetary damages under section 1983 and the MCRA are therefore dismissed.

X. *Qualified Immunity*

■ State officials sued in their individual capacities for monetary damages may raise a qualified immunity defense. *See Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 91 n. 3 (1st Cir.1994) ("[q]ualified immunity confers immunity

---

**29.** As previously discussed, Cole's use of racial slurs, while unprofessional, does not amount to unconstitutional conduct.

**30.** The third cause of action also alleges a violation of Shabazz' state civil rights.

only from individual-capacity suits, such as suits for money damages"). Defendants therefore claim they are entitled to qualified immunity from damages in their individual capacities.

▮▮▮▮ The doctrine of qualified immunity shields public officials performing discretionary functions from civil damages. *Santiago v. Fenton,* 891 F.2d 373, 386 (1st Cir.1989). The standard to establish qualified immunity "is not demanding," *Ricci v. Urso,* 974 F.2d 5, 6 (1st Cir.1992), and is ordinarily resolved prior to trial. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Qualified immunity, however, does not shield public officials from prospective injunctive relief. *Knox v. McGinnis,* 998 F.2d 1405, 1412–1413 (7th Cir.1993).

▮▮▮▮ Qualified immunity exists insofar as defendants' " 'conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known.'" *Elliott v. Cheshire County,* 940 F.2d 7, 10 (1st Cir.1991) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The requirements are twofold in the sense that: (1) a clearly established statutory or constitutional law must exist at the time of the conduct in question; and (2) a reasonable official would have known that his conduct violated this right. *Frazier v. Bailey,* 957 F.2d 920, 928 (1st Cir.1992) (stating that *Harlow* requires examination of these two issues). Stated otherwise, public officials

may avoid liability for monetary damages under section 1983 "by showing either that they did not violate a right clearly established under federal law or that they acted with objective legal reasonableness." *Camilo–Robles v. Hoyos,* 151 F.3d at 5. Thus, even when rights are clearly established, "qualified immunity protects a governmental official 'if it was objectively reasonable for the official to believe that his acts did not violate those rights.'" *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir. 1990). The relevant question "is whether the allegedly violated federal right was established with sufficient clarity that a reasonable government functionary should have conformed his conduct accordingly." *Camilo–Robles v. Zapata,* 175 F.3d 41, 1999 WL 223051 at * 2 (1st Cir. April 20, 1999).

▮▮▮ The qualified immunity defense leaves " ' "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." ' " *Rivera v. Murphy,* 979 F.2d 259, 263 (1st Cir.1992) (quoting *Hunter v. Bryant,* 502 U.S. at 229, 112 S.Ct. 534 quoting *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Reasonable errors therefore do not remove an official's conduct from the protection afforded by the defense. *See Rivera v. Murphy,* 979 F.2d at 263 n. 1.

▮▮▮▮ With respect to Matesanz, the qualified immunity inquiry presents a slightly different inquiry.[31] If the inquiry

---

**31.** Due, in part, to Matesanz' dismissal from the section 1983 claims in the first and third causes of action, his entitlement to qualified immunity arises under state law. The SJC has determined "that it is 'consistent with the intent of the Legislature in enacting the Civil Rights Act to adopt thereunder the standard of immunity for public officials developed under § 1983.'" *Duca v. Martins,* 941 F.Supp. 1281, 1294 (D.Mass.1996) (quoting *Duarte v. Healy,* 405 Mass. 43, 537 N.E.2d 1230, 1232 (1989)). Accordingly, " 'public officials are not liable under the Civil Rights Act for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was 'clearly established' at that time.'" *Duca v. Martins,* 941 F.Supp. at 1294 (D.Mass.1996) (quoting *Duarte v. Healy,*

537 N.E.2d at 1232). Although the First Circuit's formulation of a supervisor's entitlement to qualified immunity post-dates the enactment of the MCRA, it is based on the premise that supervisors occupy a status separate and removed from the primary actor and cannot be held liable under a theory of respondeat superior under section 1983. Likewise, supervisors cannot be held liable under the MCRA under a respondeat superior theory. *Mustapha v. Town of Methuen,* 1998 WL 77882 at * 1 (Mass.Super. Feb.20, 1998). Accordingly, it is likely that the SJC would adopt the analysis used in *Camilo–Robles v. Hoyos,* 151 F.3d at 6, and summarized *infra* in determining Matesanz' entitlement to qualified immunity under the MCRA.

focused solely upon whether the underlying right was clearly established and the reasonableness of the underlying subordinate's actions, the inquiry would come "disquietingly close" to imposing liability based on respondent superior. *Camilo–Robles v. Zapata*, 175 F.3d 41, 1999 WL 223051 at * 3 (1st Cir. April 20, 1999). Thus, where the supervisor is not directly involved in the underlying violation, "the 'clearly established' prong of the qualified immunity inquiry is satisfied when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinate in that context." *Camilo–Robles v. Hoyos*, 151 F.3d at 6. Where constitutional rights and supervisory liability are clearly established, the question "reduces to the test of objective legal reasonableness" which involves assessing "whether, in the particular circumstances confronted by each [supervisor], that [supervisor] should reasonably have understood that his conduct jeopardized these rights." *Camilo–Robles v. Hoyos*, 151 F.3d at 6–7.

■ Defendants argue their entitlement to qualified immunity from damages with respect to the section 1983 and the constitutional claims, presumably under the MCRA. Accordingly, they make no argument that their immunity extends to the claims in the nature of certiorari.[32] Hence, this court will not address such immunity *sua sponte*. *See, e.g., Longval v. Commissioner of Correction*, 404 Mass. 325, 535 N.E.2d 588, 592 (1989) (noting that the defendants made "no argument that their immunity extends beyond what would be available to a defendant in an action under 42 U.S.C. § 1983"); *see generally Blissett v. Coughlin*, 66 F.3d 531, 539 (2nd Cir.1995) (defendants must adequately develop defense "so that the trial court can determine which claims, if any, may be disposed of by summary judgment").[33] The remaining section 1983 claims are the first and third causes of action against Cole. The remaining MCRA claims are against Cole and Matesanz under the third cause of action.

■ Under the first cause of action, Cole is entitled to qualified immunity in the event her actions in retaliating against

---

**32.** A claim in the nature of certiorari is not necessarily a constitutional claim inasmuch as review "is limited to correcting substantial errors of law that are apparent on the record." *Malone v. Civil Service Commission*, 38 Mass.App.Ct. 147, 646 N.E.2d 150, 153 (1995).

**33.** In the motion for reconsideration (Docket Entry # 120) and the motion to dismiss (Docket Entry # 79), defendants discuss the defense generally and refer only to the defense in the context of a section 1983 claim and/or a constitutional violation. In particular, the motion for reconsideration speaks to the defense in terms of section 1983 and that this court has the obligation to resolve the "qualified immunity defense in a § 1983 action." (Docket Entry # 120, p. 14). The motion also refers to the violation of "constitutional rights" (Docket Entry # 120, p. 15) as opposed to statutory rights under state regulations or laws. Likewise, the motion to dismiss begins the qualified immunity argument with the statement that Shabazz filed "this § 1983 action against the defendants in their individual capacities." (Docket Entry

# 79, p. 5). Thereafter, defendants provide a general statement of the doctrine and then note that, "[i]n the case at bar, ... defendants are entitled to qualified immunity with regard to the alleged *constitutional* violations." (Docket Entry # 120, p. 7; emphasis added). Inasmuch as the MCRA reaches alleged constitutional violations, this court will address defendants' immunity to the remaining MCRA claims as well as to the remaining section 1983 claims. This court will not address *sua sponte* the applicability of the defense to the claims in the nature of certiorari arising under state law. In the event defendants wish to argue and adequately develop the defense with respect to the claims in the nature of certiorari in the fifth and sixth causes of action, they should cite caselaw or legal authority, *see* LR. 7.1(b), which apply the defense in the context of a claim in the nature of certiorari. Defendants may raise the defense in a motion for judgment as a matter of law under Rule 50, Fed.R.Civ.P. Contrary to Shabazz' argument, defendants have not waived the defense. *See generally Guzman–Rivera v. Rivera–Cruz*, 98 F.3d 664, 667–668 (1st Cir.1996) (discussing waiver).

Shabazz for filing grievances were not clearly established law in the fall of 1995 and her conduct was objectively reasonable under the circumstances. As previously indicated,[34] it was clearly established law in 1995 that guards were "precluded from disciplining inmates for an improper purpose." *Sires v. Berman*, 834 F.2d 9, 13–14 (1st Cir.1987). It was also clearly established in 1995 that the First Amendment applied in prisons subject to the deference afforded prison officials. *Gomes v. Fair*, 738 F.2d 517, 524 (1st Cir.1984). Finally, it was also clearly established law in 1995 that filing a disciplinary charge in retaliation for an inmate filing a grievance was actionable under section 1983. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989); *accord Newsom v. Norris*, 888 F.2d 371, 377 (6th Cir.1989) (collecting cases); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988).

Viewing the facts alleged in the complaint and attached documents in favor of Shabazz, there is support in the record that Cole filed the disciplinary charge in October 1995 primarily or substantially because Shabazz exercised his free speech by criticizing Cole for using racial slurs in his November 1994 grievance and/or because Shabazz wrote to Matesanz complaining about the photocopying policy. A reasonable prison official would understand that filing the disciplinary charge against Shabazz for conduct which disrupts the orderly running of the institution without a proper basis and because he filed a grievance would violate Shabazz' clearly established constitutional rights. On the motion to dismiss, therefore, Cole is not entitled to qualified immunity. Defendants may, of course, raise the issue at trial.

▮▮▮ Under the third cause of action, Cole is entitled to qualified immunity if filing the false disciplinary charge because of Shabazz' race was not clearly established law in the fall of 1995 or if she nevertheless acted with objective legal reasonableness. As noted above, it was clearly established law in the fall of 1995 [35] that a prison official could not discipline an inmate "for an improper purpose." *Sires v. Berman*, 834 F.2d at 13–14. Such an improper purpose would necessarily include racial discrimination. As stated by the Supreme Court in 1974, the Equal Protection Clause of the Fourteenth Amendment protects prisoners "from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *see also Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) ("racial segregation, which is unconstitutional outside prisons, is unconstitutional inside prisons, save for 'necessities of prison security and discipline' "); *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir.1989) (recognizing that "elimination of racial discrimination remains at the heart of the Fourteenth Amendment"); *Pagan v. Dubois*, 884 F.Supp. 25, 27–28 (D.Mass.1995) (noting constitutional prohibition against discrimination based on ethnic origin in case involving Latino inmates).

Thus, by 1995 a number of courts recognized a violation of the Equal Protection Clause of the Fourteenth Amendment where prison officials allegedly disciplined prison inmates because of their race. *See, e.g., Propst v. Leapley*, 886 F.2d 1068, 1070–1071 (8th Cir.1989); *Giles v. Henry*, 841 F.Supp. 270 (S.D.Iowa 1993) (recognizing inmate's claim of discriminatory discipline under Equal Protection Clause but finding facts insufficient to support claim); *Battle v. Anderson*, 376 F.Supp. 402, 421 (E.D.Okla.1974) (under Equal Protection Clause, "prison officials may not discriminate on the basis of race when ... administering discipline"), *aff'd in part and rev'd in part on other grounds*, 993 F.2d 1551, 1993 WL 152672 (10th Cir.1993).

**34.** See footnote number 21.

**35.** For present purposes, this court focuses on the second disciplinary charge of conduct which disrupts the orderly running of the institution which the hearing officer dismissed.

For purposes of evaluating Cole's entitlement to qualified immunity, it is helpful to examine the merits of establishing such a section 1983 claim as set forth in the caselaw by the fall of 1995. To state an equal protection claim under section 1983, the plaintiff had to "allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Johnson v. Morel*, 876 F.2d at 479; *see also Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 354 (1st Cir.1995) (the plaintiff must provide evidence that "state actor intentionally discriminated against her because she belonged to a protected class"). Although the plaintiff did not need to show that the discriminatory purpose was the only reason for the decision, the plaintiff had to demonstrate that intentional discrimination was "a motivating factor in the decision." *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265–266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

"[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). As of 1995, determining whether discriminatory intent was a motivating factor either through direct or circumstantial evidence could involve considering "the historical background of the decision ... particularly if it reveals a series of official actions taken for invidious purposes." *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. at 266–267, 97 S.Ct. 555 (also noting that discriminatory impact, where decision bears more heavily on one group than upon another, "may provide an important starting point"). "The specific sequence of events leading up to the challenged decision" might also be relevant in determining discriminatory intent. *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. at 267, 97 S.Ct. 555. Finally,

verbal abuse and the use of racial slurs could also provide evidence of discriminatory intent.[36] *See Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d at 348 & 354; *Johnson v. Morel*, 876 F.2d at 479 & 483.

■ In sum, clearly established law in the fall of 1995 prohibited a prison official from intentionally discriminating against an inmate because of his race. The contours of the inmate's right were sufficiently clear. The determinative inquiry therefore reduces to whether Cole acted in an objectively reasonable manner.

Viewing the alleged facts and reasonable inferences in Shabazz' favor while mindful of the deference afforded prison officials such as Cole, *see Gomes v. Fair*, 738 F.2d at 524 & 528, prior to issuing the disciplinary charge of disrupting the orderly running of the institution on or about October 25, 1996, Cole engaged, over a long period of time, in a persistent use of racial slurs and epithets against Shabazz due to his race. One year prior to October 1995 she issued a disciplinary charge against Shabazz which proved to be without merit. The events leading to the October 1995 disciplinary charge of the disruption of the orderly running of the institution included Cole's consistent harassment and repeated attempts to have Shabazz withdraw his resignation noting Cole's use of racial epithets. She then lodged a disciplinary charge against Shabazz which was dismissed. Moreover, the facts fail to support a justification for the charge based on institutional security. In short, such conduct evidences a discriminatory motive and the lodging of a disciplinary charge because of Shabazz' race. A reasonable prison official should have known that such conduct was obviously inconsistent with Shabazz' rights. At least with respect to a motion to dismiss, Cole is not entitled to qualified immunity with respect to the section 1983 claim in the third cause of action

---

**36.** This list is not exhaustive but, rather, highlights relevant factors in light of the facts alleged in the case at bar.

at this time. She may, of course, raise the issue at trial.

She is also not entitled to qualified immunity under the MCRA. "Central to proof of a violation of [the MCRA] is the existence of a right secured by *'the Constitution* or laws *of the United States* or of the Commonwealth.'" *Hovnanian at Taunton, Inc. v. City of Taunton*, 37 Mass. App.Ct. 639, 642 N.E.2d 1044, 1048 (1994) (emphasis added), *review denied*, 419 Mass. 1104, 646 N.E.2d 409 (1995). In light of the equivalent nature of the qualified immunity defense under section 1983 and the MCRA,[37] the foregoing analysis compels the conclusion that Cole is also not entitled to qualified immunity under the MCRA with respect to the third cause of action. *See Duca v. Martins*, 941 F.Supp. at 1294 (the defendants' qualified immunity under section 1983 compelled same conclusion with respect to their immunity under MCRA); *see also Brennan v. Hendrigan*, 888 F.2d 189, 196 (1st Cir. 1989). For reasons already explained, an inmate's right to equal protection under the Fourteenth Amendment of the United States Constitution was clearly established by the time Cole lodged the disciplinary charge of disrupting the orderly running of the institution on or about October 25, 1995. Also for reasons already explained, a reasonable prison official would understand that the aforementioned conduct of Cole would violate Shabazz' right to equal protection under the Fourteenth Amendment. Accordingly, Cole is not entitled to qualified immunity with respect to the MCRA claim in the third cause of action.

 Matesanz, however, is entitled to qualified immunity with respect to Shabazz' third cause of action. For reasons already stated in part VIII, there is no indication that Matesanz knew about Cole's conduct. The alleged racial discrimination in the filing of the false disciplinary charges was not widespread. The letters and grievance as well as the disciplinary files do not put Matesanz on notice that Cole was lodging the disciplinary

charges because of Shabazz' race. He acted with objective legal reasonableness and is therefore entitled to qualified immunity with respect to the MCRA state civil rights violations alleged in the third cause of action.

## CONCLUSION

The motion to dismiss (Docket Entry # 79) is ALLOWED in part and DENIED to the extent set forth in the body of this opinion. Trial is set to begin on August 9, 1999, from 9:00 a.m. to 1:00 p.m. This court will conduct a pretrial conference at 10:00 a.m. on August 4, 1999. In light of the disposition of the various causes of action, the parties are ordered to file new pretrial memoranda five days in advance of the August 4, 1999 pretrial conference.

---

**37.** See footnote number 31.